# UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

| | |
|---|---|
| **CHATEAU LYNCH-BAGES,**<br><br>       Appellant,<br><br>**v.**<br><br>**CHATEAU ANGELUS S.A.,**<br><br>       Appellee. | **Appeal No. 2024-1197** |

**Re:  TTAB Opposition No. 91268431**

## <u>NOTICE FORWARDING CERTIFIED LIST</u>

A Notice of Appeal to the United States Court of Appeals for the Federal Circuit was timely filed by Appellant on November 24, 2023, in the United States Patent and Trademark Office (USPTO), in connection with the above-identified opposition proceeding.  Pursuant to 15 U.S.C. § 1071(a)(3) and Federal Circuit Rule 17(b)(1), the USPTO today is forwarding, to counsel for Appellant and Appellee, a certified list of documents comprising the record in the USPTO.

Respectfully submitted,

KATHERINE K. VIDAL
Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office

Date:  January 8, 2024          By:  */s/ Orchideh Rushenas*
Orchideh Rushenas
Paralegal Specialist
Mail Stop 8, P.O. Box 1450
Alexandria, Virginia 22313-1450
571-272-9035

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing NOTICE FORWARDING CERTIFIED LIST has been served via electronic mail on counsel for Appellant and Appellee, this 8th day of January, 2024, as follows:

Michael S. Culver
MILLEN WHITE ZELANO &
  BRANIGAN P.C.
2200 Clarendon Blvd., Suite 1400
Arlington, VA 22201
Email: culver@mwzb.com

*Attorney for Appellant*

John S. Egbert
EGBERT, MCDANIEL & SWARTZ,
  PLLC
1001 Texas Ave., Suite 1250
Houston, TX 77002
Email: mail@emsip.com

*Attorney for Appellee*

By: /s/ *Orchideh Rushenas*
      Orchideh Rushenas
      Paralegal Specialist

# U.S. DEPARTMENT OF COMMERCE
## United States Patent and Trademark Office

January 8, 2024

(Date)

**THIS IS TO CERTIFY** that the annexed is an accurate statement of the content entries in the file of the trademark opposition proceeding identified below. The list was taken from the TSDR and TTABVUE electronic databases of the United States Patent and Trademark Office and comprises the record before this Office.

*Chateau Lynch-Bages*

*v.*

*Chateau Angelus S.A.*

**Opposition No. 91268431**
**Serial No. 79/285,170**
**Mark: ECHO D'ANGÉLUS**



By authority of the
DIRECTOR OF THE UNITED STATES
PATENT AND TRADEMARK OFFICE

*Orchideh Rushenas*

*Certifying Officer*

**PROSECUTION HISTORY OF SERIAL NO. 79/285,170**
**Federal Circuit Appeal No. 2024-1197**
**Mark:  ECHO D'ANGÉLUS**

| DATE | DESCRIPTION |
|------|-------------|
| 05/14/2020 | Application |
| 05/14/2020 | Drawing |
| 05/26/2020 | Filing Receipt for Trademark/Service Mark Application |
| 06/23/2020 | XSearch Search Summary |
| 06/23/2020 | Non-Final Office Action |
| 07/30/2020 | International Bureau (IB) – 1st Provisional Refusal of Protection |
| 08/13/2020 | IB – Processed Transaction |
| 09/02/2020 | Response to Non-Final Office Action |
| 10/22/2020 | Trademark Snap Shot Publication Stylesheet |
| 10/22/2020 | Trademark Snap Shot Amendment & Mail Processing Stylesheet |
| 11/04/2020 | Notification of Notice of Publication |
| 11/04/2020 | Notice of Publication |
| 11/18/2020 | IB – Notice of Possible Opposition Sent to International Bureau |
| 11/24/2020 | Trademark Official Gazette Publication Confirmation |
| 12/03/2020 | IB – Processed Transaction |
| 12/14/2020 | First 90-Day Request for Extension of Time to Oppose for Good Cause |
| 12/14/2020 | Extension of Time Granted |
| 03/24/2021 | IB – Opposition Filed (1st Refusal Note) |
| 04/15/2021 | IB – Processed Transaction |
| 10/20/2021 | IB – Notice of Possible Opposition Sent to International Bureau |
| 11/04/2021 | IB – Processed Transaction |

**HISTORY OF OPPOSITION NO. 91268431**
**Federal Circuit Appeal No. 2024-1197**
**Mark:  ECHO D'ANGÉLUS**

| DATE | DESCRIPTION |
|---|---|
| 03/23/2021 | Notice of Opposition |
| 03/30/2021 | Order: Notice and Trial Dates Sent; Answer Due |
| 05/10/2021 | Applicant's Answer |
| 10/06/2021 | Opposer's Motion to Compel Discovery; Exhs. A – E |
| 10/13/2021 | Order: Proceedings Suspending Pending Disposition of Motion |
| 10/26/2021 | Applicant's Consented Motion to Extend Time |
| 11/03/2021 | Order: Consented Motion to Extend Time Granted |
| 11/10/2021 | Opposer's Withdrawal of Motion to Compel; Exhs. A – B |
| 11/15/2021 | Order: Proceedings Resumed |
| 12/16/2021 | Opposer's Notification of Expert Witness Report |
| 01/14/2022 | Applicant's Motion to Extend Discovery Period |
| 02/01/2022 | Opposer's Consented Motion to Extend Time to Respond to Applicant's Motion |
| 02/08/2022 | Order: Consented Motion to Extend Time to Respond to Applicant's Motion Granted |
| 02/11/2022 | Opposer's Response to Motion to Extend Discovery; Exh. 1 |
| 04/29/2022 | Applicant's Motion to Withdraw or Amend Admissions; Exhs. A – D |
| 05/02/2022 | Order: Proceedings Suspending Pending Disposition of Motion |
| 05/16/2022 | Opposer's Opposition to Motion to Withdraw or Amend Admissions; Exh. 1 |
| 06/06/2022 | Applicant's Reply in Support of Motion to Withdraw or Amend Admissions |
| 06/30/2022 | Order: Applicant's Motion to Withdraw or Amend Admissions Granted; Applicant's Motion to Extend Discovery Period Granted in Part; Proceedings Resumed; Dates Reset |
| 07/15/2022 | Applicant's Change of Correspondence Address |
| 10/17/2022 | Opposer's Consented Motion to Extend Deadlines |

| DATE | DESCRIPTION |
|------|-------------|
| 10/17/2022 | Order: Consented Motion to Extend Deadlines Granted |
| 11/16/2022 | Opposer's Trial Testimony of Mark Lartigau |
| 11/16/2022 | Opposer's Notice of Reliance; Exhs. 1 – 5 |
| 01/17/2023 | Applicant's Notice of Reliance; Exhs. A – K |
| 03/03/2023 | Opposer's Second Notice of Reliance |
| 04/28/2023 | Opposer's Trial Brief |
| 06/27/2023 | Order: Applicant's 01/17/2023 Notice of Reliance Did Not Meet Board Criteria |
| 09/28/2023 | Board Decision: Opposition Sustained in Part / Dismissed in Part |
| 11/24/2023 | Opposer's Notice of Appeal to Federal Circuit |

> This Opinion is not a
> Precedent of the TTAB

Mailed: September 28, 2023

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

Trademark Trial and Appeal Board

_____

*Chateau Lynch-Bages*
*v.*
*Chateau Angelus S.A.*

_____

Opposition No. 91268431

_____

Michael Culver, of Millen, White, Zelano & Branigan, P.C.,
   for Chateau Lynch-Bages.

John S. Egbert, of Egbert, McDaniel & Swartz, PLLC,
   for Chateau Angelus S.A.

_____

Before Cataldo, Lynch, and Casagrande,
   Administrative Trademark Judges.

Opinion by Casagrande, Administrative Trademark Judge:

   Chateau Angelus S.A. (Applicant) filed an application to register the mark ECHO

D'ANGÉLUS in standard characters on the Principal Register for goods identified as

"Alcoholic beverages except beers; hard ciders; digestive beverages, namely, alcohols

being alcoholic beverage except beers, and liqueurs; wines; beverages in the nature of spirits; alcoholic extracts and essences" in International Class 33.[1]

Chateau Lynch-Bages (Opposer) opposes registration of Applicant's mark on the grounds of lack of bona fide intent to use the mark for all of the goods identified in the application and likelihood of confusion.[2] Opposer has pleaded ownership of the registered Principal Register mark ECHO DE LYNCH BAGES in standard characters for goods identified as wines in International Class 33.[3] Applicant denied the salient allegations in the Notice.[4]

Only Opposer filed a trial brief, although we note that applicants are not required to do so. *See* Trademark Rule 2.128(a)(1), 37 C.F.R. § 2.128(a)(1) ("The brief of the

---

[1]    Application Serial No. 79285170 was filed on March 31, 2020, under Section 66a of the Trademark Act, 15 U.S.C. § 1141f, seeking an extension of protection based on International Registration No. 1529793, which registered on Mar. 31, 2020. The application notes that "The English translation of 'ECHO D'ANGÉLUS' is 'ECHO OF ANGELUS'."

[2]    *See* 1 TTABVUE. Citations in this opinion to filings in proceedings before the Board are to TTABVUE, the Board's online docketing system. The number preceding TTABVUE corresponds to the docket entry number, and any numbers following TTABVUE refer to the page(s) of the docket entry, as paginated by TTABVUE, where any specifically cited portions of the document appear.

[3]    Registration No. 3747054 issued February 9, 2010; Section 71 declaration accepted and Section 15 declaration acknowledged. The registration notes that "The English translation of 'Echo de Lynch Bages' in the mark is Echo of Lynch Bages."

[4]    4 TTABVUE. Under the heading "Affirmative Defenses," Applicant includes an allegation that the First Amended Notice of Opposition fails to state a claim upon which relief can be granted (¶ 27). This is not an affirmative defense. *See, e.g., Shenzhen IVPS Tech. Co. v. Fancy Pants Prods., LLC*, 2022 USPQ2d 1035, at *3 n.5 (TTAB 2022) (failure to state a claim is not an affirmative defense). Under the same heading, Applicant also alleges that the marks are "different in sound, appearance, connotation and commercial impression" and that "the term [ECHO] is a 'weak' mark that is entitled to limited protection." These statements are all merely amplifications of Applicant's denial of Opposer's allegations, not affirmative defenses. *See, e.g., Mars Generation, Inc. v. Carson*, 2021 USPQ2d 1057, at *3-4 (TTAB 2021); *see generally Germain v. US Bank Nat'l Ass'n*, 920 F.3d 269, 273 n.14 (5th Cir. 2019) (an affirmative defense "assumes the plaintiff proves everything he alleges and asserts, even so, the defendant wins") (citation omitted).

party in the position of plaintiff shall be due not later than sixty days after the date set for the close of rebuttal testimony. The brief of the party in the position of defendant, *if filed*, shall be due not later than thirty days after the due date of the first brief.") (emphasis added). As a consequence, we do not take the failure of Applicant to file a trial brief as a concession of the case. *See, e.g.*, *Yazhong Investing Ltd. v. Multi-Media Tech. Ventures, Ltd.*, 126 USPQ2d 1526, 1531 n. 13 (TTAB 2018). The onus remains on Opposer, as the party in the position of plaintiff in this proceeding, to prove its case by a preponderance of the evidence. *See generally B&B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 113 USPQ2d 2045, 2049 (2015) ("The party opposing registration bears the burden of proof, see [37 C.F.R.] § 2.116(b), and if that burden cannot be met, the opposed mark must be registered, see 15 U.S.C. § 1063(b)"); *Stratus Networks, Inc. v. UBTA-UBET Commc'ns Inc.*, 955 F.3d 994, 2020 USPQ2d 10341, at *1 (Fed. Cir. 2020) ("In opposition proceedings, the opposer has the burden of proving a likelihood of confusion by a preponderance of the evidence.") (citation omitted).

The case is now ready for decision. For the reasons detailed below, we sustain the Opposition in part (as to "hard ciders; digestive beverages, namely, alcohols being alcoholic beverage except beers, and liqueurs; beverages in the nature of spirits; alcoholic extracts and essences") and dismiss it in part (as to "Alcoholic beverages except beers" and "wines").

## I.    The Record

The record includes the pleadings and, by operation of Trademark Rule 2.122(b), 37 C.F.R. § 2.122(b), the file of the involved application. In addition, Opposer introduced the trial declaration of Mark Latigau,[5] as well as a notice of reliance attaching several of Applicant's responses to written discovery and correspondence between the parties.[6]

Applicant introduced a notice of reliance[7] attaching four registrations it owns that include the term ANGELUS, several of Opposer's responses to written discovery, Wikipedia entries for the term ANGELUS and for Applicant itself, Applicant's verified answers to Opposer's interrogatories,[8] excerpts from Applicant's website, and

---

[5]   24 TTABVUE.

[6]   25 TTABVUE. Correspondence between the parties normally is not proper subject matter for a notice of reliance. *See* Trademark Rule 2.122(e), 37 C.F.R. § 2.122(e). Here, however, Applicant has not objected and, further, has submitted Opposer's responses to Applicant's requests for admission, two of which concern the contents of the correspondence. *See* 26 TTABVUE 26 (Requests for Admission Nos. 16, 17). Under these circumstances, we exercise our discretion to treat the correspondence as of record.

[7]   26 TTABVUE.

[8]   Normally, a party may not introduce its own discovery responses by notice of reliance. Trademark Rule 2.120(k)(5), 37 C.F.R. § 2.120(k)(5). A verified interrogatory answer not properly offered in evidence under Trademark Rule 2.120(k)(5) may nevertheless be considered by the Board if the nonoffering party does not object thereto, and/or treats the answer, or admission, as being of record, and/or improperly offers an interrogatory answer, or an admission, in the same manner. *See e.g.*, *Safeway Stores, Inc. v. Captn's Pick, Inc.*, 203 USPQ 1025, 1027 n.1 (TTAB 1979) (no objection by either party to the other's improper reliance on its own answers; opposer did not object to interrogatories introduced by applicant and in fact referred to answers to other of opposer's interrogatories without benefit of notice of reliance). Here, Opposer has objected to Applicant's submission of its verified interrogatory answers. *See* 28 TTABVUE 20. However, to the extent such answers may constitute admissions against Applicant's interest, we will consider them.

several third-party registrations and applications that include the term ECHO for goods in International Class 33.

Opposer introduced a rebuttal Notice of Reliance attaching several dictionary definitions.[9]

## II.    Statutory Entitlement to Oppose

In every inter partes case, the plaintiff must establish its statutory entitlement to bring the type of proceeding it filed. To establish entitlement to bring an opposition, under Section 13 of the Trademark Act, 15 U.S.C. § 1063, a plaintiff must demonstrate: (i) an interest falling within the zone of interests protected by the opposition statute; and (ii) proximate causation. *See, e.g.*, *Corcamore, LLC v. SFM, LLC*, 978 F.3d 1298, 2020 USPQ2d 11277, at *4 (Fed. Cir. 2020). Demonstrating a real interest in opposing registration of a trademark satisfies the zone-of-interests requirement, and demonstrating a reasonable belief in damage by the registration of a mark demonstrates damage proximately caused by registration of the mark. *Id.* at *7-8.

Opposer introduced printouts from the Office's TSDR database showing that its pleaded registration is valid and subsisting, that it owns the registration, and argues that Applicant's mark creates a likelihood of consumer confusion as to source in view of this registration. "Where a plaintiff has proven entitlement to a statutory cause of action as to at least one properly pleaded ground, it has established [statutory entitlement to a cause of action] for any other legally sufficient ground." *Int'l Dairy*

---

[9]    27 TTABVUE.

*Foods Ass'n v. Interprofession du Gruyere*, 2020 USPQ2d 10892, at \*9 (TTAB 2020),

*aff'd*, 575 F. Supp. 3d 627 (E.D. Va. 2021), *aff'd*, 61 F.4th 407, 2023 USPQ2d 266 (4th

Cir. 2023). Accordingly, Opposer has established its entitlement to bring this

opposition proceeding. *See, e.g.*, *Made in Nature, LLC v. Pharmavite LLC*, 2022

USPQ2d 557, at \*7 (TTAB 2022) (pleaded registrations demonstrated entitlement to

oppose on basis of likelihood of confusion); *Primrose Ret. Communities, LLC v.*

*Edward Rose Senior Living, LLC*, 122 USPQ2d 1030, 1032 (TTAB 2016) (same).

## III.    Claims

As mentioned, Opposer asserts two claims. We first address Opposer's claim that

"Applicant did not have a bona fide intention to use in commerce the mark Echo

d'Angelus for all of the goods" in its application.[10]

> A. Whether Applicant had a *bona fide* intent to use its mark on the identified
> goods at the time it filed for extension of protection under Section 66(a) of
> the Trademark Act?

By filing its application under Trademark Act Section 66(a) and requesting an

extension of protection to the United States based on a foreign application, Applicant

was required to include a declaration of bona fide intention to use the mark in

commerce. 15 U.S.C. § 1141f(a). Such declaration must specify that the

applicant/holder has a bona fide intention to use the mark in commerce that the U.S.

Congress can regulate on or in connection with the goods or services specified in the

international application. Trademark Rules 2.33(e)(1), 2.34(a)(5), 37 C.F.R.

§§ 2.33(e)(1), 2.34(a)(5); *see also* Trademark Act Sections 45 and 60(5), 15 U.S.C.

---

[10]    *See* Notice of Opposition ¶ 6, 1 TTABVUE.

§§ 1127, 1141(5). "Therefore, lack of bona fide intent is a proper statutory ground on which to challenge a request for extension under Section 1141f." *Société des Produits Nestlé S.A. v. Taboada*, 2020 USPQ2d 10893, at *8 (TTAB 2020). In Applicant's September 2, 2020, response to a June 23, 2020, Nonfinal Office Action provisionally refusing the requested extension of protection, Applicant's counsel filed a declaration attesting that "the applicant has a bona fide intention to use the mark in commerce and had a bona fide intention to use the mark in commerce as of the application filing date."

Whether Applicant had a bona fide intention to use the mark in commerce when it filed its application is an objective determination based on the totality of the circumstances. *See, e.g.*, *Tiger Lily Ventures Ltd. v. Barclays Cap. Inc.*, 35 F.4th 1352, 2022 USPQ2d 513, at *10 (Fed. Cir. 2022). Applicant's intent must be "firm," "demonstrable" with "objective evidence of intent" and "more than a mere subjective belief." *Id.* at 1897-98.

Where the Board finds that an applicant lacked a bona fide intent as to some but not all of the goods (and there is no allegation or proof of fraud), those goods will be deleted from the application, but the application is not deemed void in its entirety. *See, e.g.*, *Syndicat Des Proprietaires Viticulteurs De Chateauneuf-Du-Pape v. Pasquier DesVignes*, 107 USPQ2d 1930, 1943 (TTAB 2013) (opposition sustained in part solely as to those goods for which applicant admitted its lack of a bona fide intent to use the applied-for mark); *see also Wet Seal, Inc. v. FD Mgmt., Inc.*, 82 USPQ2d 1629, 1633 (TTAB 2007) ("[A]n application will not be deemed void for lack of a bona fide

intention to use absent proof of fraud, or proof of a lack of bona fide intention to use the mark on all of the goods identified in the application, not just some of them."); *cf. Grand Canyon W. Ranch, LLC v. Hualapai Tribe*, 78 USPQ2d 1696, 1697 (TTAB 2006) (deleting some goods from a use-based application for which the mark was not actually used rather than finding the entire application void ab initio).

An opposer bears "the initial burden of demonstrating by a preponderance of the evidence that applicant lacked a bona fide intent to use the mark on the identified goods." *Boston Red Sox Baseball Club LP v. Sherman*, 88 USPQ2d 1581, 1587 (TTAB 2008). An opposer may meet this burden by establishing that there is an "absence of any documentary evidence on the part of [Applicant] regarding such intent." *Commodore Elecs. Ltd. v. CBM K.K.*, 26 USPQ2d 1503, 1507 (TTAB 1993). If an opposer meets its burden, the applicant may "elect to try to rebut the opposer[s'] prima facie case by offering additional evidence concerning the factual circumstances bearing upon its intent to use its mark in commerce." *Id.* at 1507 n.11. However, an applicant's "mere statement of subjective intention, without more, would be insufficient to establish applicant's bona fide intention to use the mark in commerce." *Saul Zaentz Co. v. Bumb*, 95 USPQ2d 1723, 1727 (TTAB 2010) (citation omitted).

Opposer argues that the entire application is void because the only evidence of Applicant's bona fide intent is a July 2018 letter Applicant sent to Opposer.[11] Opposer

---

[11] *See* 28 TTABVUE 21-22.

characterizes the letter as 'rather stale' because it was sent about twenty (20) months before Applicant filed the request for extension of protection at issue.[12]

The English translation of the letter states, in pertinent part: "I am writing to you because we are currently working on the creation of a new cuvée which we will call "Echo d'Angélus". … Although this is only a project at this stage, I wanted to let you know."[13] Below is the English translation of what Opposer wrote back:

> I have received your letter of July 31st informing me of your project to create an "Echo d'Angélus" trademark. You must suspect, and your approach is the recognition, that the creation of such a brand would pose a serious problem for us. We can not accept it. Indeed, we have been operating the trademark Echo de Lynch Bages for many years, which is now well recognized into the world markets. We will not let it be affected by such a close mark. … You talk to me about a simple "project". However, I observe that you filed the trademark "Echo d'Angélus" at the French trademark register INPI on July 13th before even contacting me. We will of course oppose this filing. We consider that a trademark "Echo d'Angélus" would constitute an infringement of our trademark ….[14]

Not only do these letters fail to make out a prima facie case because they are the opposite of the absence of documentation typically said to constitute a prima facie case, *see Commodore Elecs. Ltd.*, 26 USPQ2d at 1507, we think that these letters, in the absence of any other evidence bearing on Applicant's intent, actually reflect the required bona fide intent. Opposer's response suggests why Applicant reached out to Opposer. Opposer sells wine under the ECHO DE LYNCH BAGES mark and

---

[12]    *See id.* at 22.

[13]    25 TTABVUE 32.

[14]    *See id.* at 34 (paragraph breaks omitted).

Applicant wanted to alert Opposer that it was "currently working on the creation of a new cuvée which we will call 'Echo d'Angélus'" in order to determine whether Opposer would voice any objection to the name.[15] Letting a competing wine producer know that one is going to launch a wine with the same first word in its name, and thus potentially inviting legal proceedings, is inconsistent with a lack of bona fide intent. Indeed, Opposer confirmed that it understood why Applicant had reached out and voiced its objection to the name Applicant disclosed as "trademark" or "brand." Opposer's reply letter also confirmed that it was aware that Applicant had filed to obtain a French registration of "Echo d'Angélus" and informed Applicant that Opposer would oppose the French filing.[16]

We further note that Applicant has four U.S. trademark registrations for wine, which falls within the list of goods specified in the application opposed here. In the absence of evidence to the contrary, this suggests that Applicant has the capacity to produce at least one of the goods identified in the application.[17] *See M.Z. Berger &*

---

[15]  We may take judicial notice of dictionary definitions, *see, e.g.*, *B.V.D. Licensing Corp. v. Body Action Design, Inc.*, 846 F.2d 727, 6 USPQ2d 1719, 1721 (Fed. Cir. 1988); *Univ. of Notre Dame du Lac v. J. C. Gourmet Food Imports Co.*, 213 USPQ 594 (TTAB 1982), *aff'd*, 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983), and, here, we take notice the term "cuvée" means "a blend of wine, generally the result of combining wines from several batches to achieve a characteristic flavor." *See* Collins Dictionary, https://www.collinsdictionary.com/us/dictionary/english/cuvee (accessed Sept. 26, 2023).

[16]  We note that Applicant's answers to Opposer's interrogatories indicated that Opposer opposed Applicant's mark in French courts and lost, *see* 26 TTABVUE 49, but because we cannot consider Applicant's submission of its own verified answers to Opposer's interrogatories via a Notice of Reliance, that fact plays no role in our decision.

[17]  *See* Applicant's Notice of Reliance, 26 TTABVUE 3 ("These four registration … are relevant … in that they demonstrate Opposer is the owner of a number of U.S. registrations that gives it the exclusive right to use and register various 'ANGELUS' and 'D'ANGELUS' marks for wine products in International Class 33. The fact that Applicant sells wine in the U.S. in relation to other trademarks is relevant to Opposer's claims that Applicant has no

*Co. v. Swatch AG*, 787 F.3d 1368, 114 USPQ2d 1892, 1897 (Fed. Cir. 2015) ("an applicant's capacity to market and/or manufacture the identified goods is evidence that weighs against a finding that an applicant lacked bona fide intent to use").

We therefore find that the application is not void in toto.

But the application is not limited to wine. It lists "Alcoholic beverages except beers; hard ciders; digestive beverages, namely, alcohols being alcoholic beverage except beers, and liqueurs; wines; beverages in the nature of spirits; alcoholic extracts and essences." In its Supplemental Answers to Opposer's Interrogatories, Applicant averred:

> At this time, Applicant notes that it does not have plans to use the "ECHO D'ANGÉLUS" mark in the United States in relation to "hard ciders; digestive beverages, namely, alcohols being alcoholic beverage except beers, and liqueurs; beverages in the nature of spirits; alcoholic extracts and essences."[18]

Applicant further averred that it "is not able to provide or point to evidence of its bona fide intent to use the mark in relation to those goods on or prior to March 31, 2020."[19]

In view of these interrogatory answers reflecting the lack of any documentary evidence of Applicant's bona fide intent, we find that Applicant did not have a bona fide intent to use the mark ECHO D'ANGÉLUS for "hard ciders; digestive beverages, namely, alcohols being alcoholic beverage except beers, and liqueurs; beverages in

---

bona fide intent to use the 'ECHO D'ANGELUS' mark, yet another mark using Applicant's 'ANGELUS' or 'D'ANGELUS' designation, in U.S. commerce.").

[18]  *See* Applicant's First Supplemental Answers To Opposer's First Set Of Interrogatories, Answer to Interrogatory No. 5 (attached to 25 TTABVUE 22-27).

[19]  *See id.*

the nature of spirits; alcoholic extracts and essences." As to those goods, the application was and is void ab initio. We therefore sustain the opposition as to those goods. *See Syndicat Des Proprietaires Viticulteurs De Chateauneuf-Du-Pape*, 107 USPQ2d at 1943.

   B.  Likelihood of confusion

We now will assess Opposer's claim of likelihood of confusion under Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d), limited to the two remaining identified goods: "Alcoholic beverages except beers" and "wines."

Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d), prohibits registration of a mark that "so resembles a mark registered in the Patent and Trademark Office, or a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when used on or in connection with the goods of the applicant, to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1052(d). As noted at the outset, Opposer has pleaded ownership of Registration No. 3747054 for the mark ECHO DE LYNCH BAGES in standard characters for goods identified as "wines." Because Applicant has not counterclaimed to cancel Opposer's pleaded registration, which is properly of record, priority is not at issue. *See Massey Junior Coll., Inc. v. Fashion Inst. of Tech.*, 492 F.2d 1399, 181 USPQ 272, 275 n.6 (CCPA 1974) ("prior use need not be shown by a plaintiff relying on a registered mark unless the defendant counterclaims for cancellation"); *accord Top Tobacco LP v. N. Atl. Op. Co.*, 101 USPQ2d 1163, 1169 (TTAB 2011); *Itel Corp. v. Ainslie*, 8 USPQ2d 1168, 1169 (TTAB 1988).

We determine whether confusion is likely by analyzing all probative facts in evidence that are relevant to the factors set forth in *In re E.I. du Pont de Nemours & Co.* ("*du Pont*"), 476 F.2d 1357, 177 USPQ 563, 567 (CCPA 1973) (providing a nonexclusive list of 13 factors potentially relevant to likelihood of confusion). *See Cai v. Diamond Hong, Inc.*, 901 F.3d 1367, 127 USPQ2d 1797, 1800 (Fed. Cir. 2018). "Not all of the *DuPont* factors are relevant to every case, and only factors of significance to the particular mark need be considered," *Cai*, 127 USPQ2d at 1800 (quoting *In re Mighty Leaf Tea*, 601 F.3d 1342, 94 USPQ2d 1257, 1259 (Fed. Cir. 2010)), but factors "must be considered when [they] are of record." *In re Guild Mortg. Co.*, 912 F.3d 1376, 129 USPQ2d 1160, 1162-63 (Fed. Cir. 2019) (citation and internal quotation marks omitted)). We then "weigh the *DuPont* factors used in [our] analysis and explain the results of that weighing" and "the weight [we] assigned to the relevant factors." *In re Charger Ventures LLC*, 64 F.4th 1375, 2023 USPQ2d 451, at *7 (Fed. Cir. 2023) (citation omitted).

Two key factors are the similarity or dissimilarity of the marks and the goods or services. *See, e.g.*, *Federated Foods, Inc. v. Fort Howard Paper Co.*, 544 F.2d 1098, 192 USPQ 24, 29 (CCPA 1976) ("The fundamental inquiry mandated by § 2(d) goes to the cumulative effect of differences in the essential characteristics of the goods and differences in the marks.").

Here, Opposer argues that confusion is likely by pointing out that the marks are similar (*du Pont* factor 1), the goods are identical in part in that the application and registration both list wine (*du Pont* factor 2), the parties' trade channels are identical

(*du Pont* factor 3), the parties sell to the same customers and those customers are not necessarily particularly sophisticated or knowledgeable about wine (*du Pont* factor 4), and Opposer's mark is a strong one (*du Pont* factor 5).[20] Although it did not file a trial brief, Applicant filed a Notice of Reliance identifying several third-party U.S. trademark registrations for wine and other beverages in International Class 33,[21] which covers alcoholic beverages except beer. *See* 37 C.F.R. § 6.1. Applicant's Notice of Reliance indicates that these third-party registrations "are relevant to the claim of likelihood of confusion since they show the dilute nature of the term ECHO."[22] *See, e.g.*, *Juice Generation, Inc. v. GS Enters. LLC*, 794 F.3d 1334, 115 USPQ2d 1671, 1675 (Fed. Cir. 2015) ("Third party registrations are relevant to prove that some segment of the composite marks which both contesting parties use has a normally understood and well-recognized descriptive or suggestive meaning, leading to the conclusion that that segment is relatively weak.") (citations omitted).

We will now proceed to assess the evidence of record bearing on these factors.

1. The similarity of the goods.

The second factor listed in *du Pont* is the "similarity or dissimilarity and nature of the goods or services as described in an application or registration." 177 USPQ at 567. Because "the question of registrability of an applicant's mark must be decided on the basis of the identification of goods set forth in the application," this inquiry

---

[20]  *See* 28 TTABVUE 12-18.

[21]  *See* 26 TTABVUE 89-132.

[22]  *See id.* at 4.

focuses on the goods as listed in the application and registration. *Stone Lion Cap. Partners, L.P. v. Lion Cap. LLP*, 746 F.3d 1317, 110 USPQ2d 1157, 1162 (Fed. Cir. 2014) (quoting *Octocom Sys., Inc. v. Houston Comp. Servs., Inc.*, 918 F.2d 937, 16 USPQ2d 1783, 1787 (Fed. Cir. 1990)). Both the registration and the application list "wines", and to that extent are identical.[23] That they are identical as to "wines" is important because if likelihood of confusion is found even as to one listed type of goods in the application, the opposition must be sustained. *See, e.g.*, *Tuxedo Monopoly, Inc. v. Gen. Mills Fun Grp., Inc.*, 648 F.2d 1335, 1336, 209 USPQ 986, 988 (CCPA 1981) ("[L]ikelihood of confusion must be found if the public, being familiar with appellee's use of MONOPOLY for board games and seeing the mark on *any item* that comes within the description of goods set forth by appellant in its application, is likely to believe that appellee has expanded its use of the mark, directly or under a license, for such item.") (emphasis in original); *accord Squirtco v. Tomy Corp.*, 697 F.2d 1038, 216 USPQ 937, 939 (Fed. Cir. 1983); *Shunk Mfg. Co. v. Tarrant Mfg. Co.*, 318 F.2d 328, 330, 137 USPQ 881, 883 (CCPA 1963).

This factor weighs in favor of a finding of likelihood of confusion.

### 2.  The similarity of the trade channels and classes of customers.

The third *du Pont* factor considers "[t]he similarity or dissimilarity of established, likely-to-continue trade channels." *du Pont*, 177 USPQ at 567. This factor, like the comparison of the goods, looks to what is disclosed in the application and registration.

---

[23]  *See* 42 TTABVUE 31. Applicant's concession that the goods are in part identical appears at 44 TTABVUE 11.

*See, e.g., In re Detroit Athletic Co.*, 903 F.3d 1297, 128 USPQ2d 1047, 1052 (Fed. Cir. 2018). Here, neither the application nor the registration contains any limitation on trade channels. This lack of restrictions means that we presume that the goods in both are available in all the normal trade channels for such goods. *See, e.g., Kangol Ltd. v. Kangaroos U.S.A., Inc.*, 974 F.2d 161, 23 USPQ2d 1945, 1946 (Fed. Cir. 1992); *CBS Inc. v. Morrow*, 708 F.2d 1579, 218 USPQ 198, 199 (Fed. Cir. 1983). In addition, the identical goods, wine, are presumed to move in the same channels of trade to the same classes of consumers. *In re Viterra Inc.*, 671 F.3d 1358, 101 USPQ2d 1905, 1908 (Fed. Cir. 2012) (even though there was no evidence regarding channels of trade and classes of consumers, the Board was entitled to rely on this legal presumption in determining likelihood of confusion); *see also Inter IKEA Sys. B.V. v. Akea*, 110 USPQ2d 1734, 1743 (TTAB 2014); *L. & J.G. Stickley, Inc. v. Cosser*, 81 USPQ2d 1956, 1971 (TTAB 2007) ("Because the goods of both parties are at least overlapping, we must presume that the purchasers and channels of trade would at least overlap."). We find that the parties' trade channels and classes of customers are the same.

3.  Customer care and sophistication.

The fourth *du Pont* factor considers "[t]he conditions under which and buyers to whom sales are made, i.e. 'impulse' vs. careful, sophisticated purchasing." *du Pont*, 177 USPQ at 567. As just noted, due to the fact that the goods identified in the application and registration are identical in part, we presume that "the buyers to whom sales are made" comprise the same classes of buyers. *Stone Lion*, 110 USPQ2d

at 1161-62; *Citigroup Inc. v. Cap. City Bank Grp., Inc.*, 637 F.3d 1344, 98 USPQ2d 1253, 1261 (Fed. Cir. 2011).

As to the degree of care exercised by purchasers of "wines," we must base our determination on the fact that neither the application nor registration contain any limitation "as to trade channels, classes of consumers or conditions of sale," and as a consequence "we must presume that Applicant's and [Opposer's] wine encompasses inexpensive or moderately-priced wine." *In re Aquitaine Wine USA, LLC*, 126 USPQ2d 1181, 1195 (TTAB 2018). While some wine purchasers may be highly knowledgeable and discerning, others are "are not necessarily sophisticated or careful in making their purchasing decisions," *see id.*, and when the identified goods are not limited to those purchased by only sophisticated consumers, our decision must "be based on the least sophisticated potential purchasers." *Stone Lion*, 110 USPQ2d at 1163. We therefore find the degree of purchaser care neutral. *See, e.g.*, *Aquitane*, 126 USPQ2d at 1195 (wine purchaser sophistication neutral); *Syndicat Des Proprietaires Viticulteurs De Chateauneuf-Du-Pape*, 107 USPQ2d at 1942-43 (same).

4.  Third-party registrations.

As noted earlier, third-party registrations may be relevant "to prove that some segment of the … marks which both contesting parties use has a normally understood and well-recognized descriptive or suggestive meaning, leading to the conclusion that that segment is relatively weak." *Juice Generation*, 115 USPQ2d at 1675 (citations

omitted). Here, Applicant placed the following third-party registrations in the record[24]:

| Mark | Reg. No. | Goods |
|---|---|---|
| ECHO LANDS[25] | 6211725 | Alcoholic beverages except beers; Wine |
| ᴱᶜʰᵒ Sᴘʀɪɴɢ[26] | 310928 | Whiskey |
| ECHO BAY[27] | 4302602 | Alcoholic beverages except beer |
| ECHO FALLS[28] | 4780741 | Alcoholic beverages except beers; wine; sparkling wine; flavoured wines; and wine based beverage |
| ECHO PEAK[29] | 5643460 | Wine |
| ECHO ECHO[30] | 5623448 | Alcoholic beverages except beers |
| ECHO RIDGE CELLARS ("CELLARS" disclaimed)[31] | 4360530 | Wine |
| ECHOES MEADERY[32] | 6267131 | Mead; Hard cider; Wine |
| ECHOES IN THE CANYON[33] | 6943880 | Wine |
| CHARLIE & ECHO[34] | 6498057 | Wine and wine spritzers |
| ALPHA ECHO[35] | 6034605 | Alcoholic beverages, except beer |

---

[24] Applicant also placed three third-party applications in the record, *see* 26 TTABVUE 94-96, 102-05, but, as Opposer has observed, *see* 28 TTABVUE 19, applications are evidence only of the fact that they were filed and nothing else. *See, e.g.*, *Made in Nature v. Pharmavite*, 2022 USPQ2d 557, at *26 (TTAB 2022); *In re Pedersen*, 109 USPQ2d 1185, 1196 n.45 (TTAB 2013) ("The Board has long held that third-party applications are evidence only of the fact that they were filed; they have no other probative value.").

[25] 26 TTABVUE 90-91.

[26] *Id.* at 105-09.

[27] *Id.* at 116-18.

[28] *Id.* at 122-24.

[29] *Id.* at 128-29.

[30] *Id.* at 125-27.

[31] *Id.* at 119-21.

[32] *Id.* at 130-32.

[33] *Id.* at 97-99.

[34] *Id.* at 100-01.

[35] *Id.* at 90-91.

Opposition No. 91268431

| Mark | Reg. No. | Goods |
|---|---|---|
| HIBIKI (translates to "Sound" or "Echo")[36] | 1925764 | Whiskey |
| ecôS (translates to "echoes"[37]) | 3020231 | Wines |

Applicant does not indicate what suggestive significance the term ECHO might have as to wines and other non-beer alcoholic beverages. Our primary reviewing Court has indicated that where the number of third-party registrations and uses containing the term common to both an applicant's and an opposer's marks is "considerable" or "ubiquitous," *see In re i.am.symbolic, llc*, 866 F.3d 1315, 123 USPQ2d 1744, 1751-52 (Fed. Cir. 2017), such third-party evidence can be significant in showing that the common term has been weakened to some degree. Here, there are thirteen (13) such registrations. While we do not think this amounts to a "considerable" number or that use of ECHO is "ubiquitous" in this field, neither can we discount this showing entirely. While Opposer argues that the ECHO portion of its mark is "arbitrary … or, at worst, suggestive,"[38] it offers no evidence of either the conceptual (inherent) or commercial strength of its mark or of the ECHO component. Accordingly, on balance, we think these third-party registrations reflect that ECHO is a fairly commonly-chosen term in the field, and this weighs somewhat against finding that confusion is likely. *See, e.g., In re Coors Brewing Co.*, 343 F.3d 1340, 68

---

[36] *Id.* at 110-12.

[37] *Id.* at 113-15.

[38] *See* 28 TTABVUE 18. We agree with Opposer that because ECHO DE LYNCH BAGES was registered without a claim of acquired distinctiveness, it is presumed to be at least suggestive. *See, e.g., Brooklyn Brewery Corp. v. Brooklyn Brew Shop, LLC*, 17 F.4th 129, 2021 USPQ2d 1069, at *12 (Fed. Cir. 2021).

USPQ2d 1059, 1063 (Fed. Cir. 2003) ("[T]he Board permissibly declined to characterize the registered mark as weak, the '568 mark also cannot be regarded as a particularly strong mark that is entitled to broad protection."); *Olde Tyme Foods, Inc. v. Roundy's, Inc.*, 961 F.2d 200, 22 USPQ2d 1542, 1545 (Fed. Cir. 1992) ("Much of the undisputed record evidence relates to third party registrations, which admittedly are given little weight but which nevertheless are relevant when evaluating likelihood of confusion.").

5.   The similarities and dissimilarities of the marks.

This brings us to a comparison of the marks, which always is one of the most important considerations. *See, e.g.*, *Herbko Int'l, Inc. v. Kappa Books, Inc.*, 308 F.3d 1156, 64 USPQ2d 1375, 1380 (Fed. Cir. 2002) ("Turning to the relevant *DuPont* factors, the 'similarity or dissimilarity of the marks in their entireties' is a predominant inquiry.") (citation omitted). "Marks are compared along the axes of their 'appearance, sound, connotation and commercial impression.'" *Juice Generation*, 115 USPQ2d at 1676 (citation omitted).

We bear in mind that "marks must be considered in light of the fallibility of memory and not on the basis of side-by-side comparison." *In re St. Helena Hosp.*, 774 F.3d 747, 113 USPQ2d 1082, 1085 (Fed. Cir. 2014) (cleaned up; citation omitted). Thus, "[e]xact identity is not necessary to generate confusion as to source of similarly-marked products." *Bridgestone Ams. Tire Ops., LLC v. Fed. Corp.*, 673 F.3d 1330, 102 USPQ2d 1061, 1064 (Fed. Cir. 2012) (citation omitted); *Phillips Petroleum Co. v. Knox Indus. Corp.*, 277 F.2d 945, 125 USPQ 576, 577 (CCPA 1960) ("This issue is whether

the marks are confusingly similar, not whether they are identical.") (citation omitted).

The similarity-of-marks inquiry is usually a matter of degree. *See, e.g.*, *St. Helena Hosp.*, 113 USPQ2d at 1085 ("Similarity is not a binary factor but is a matter of degree.") (citation omitted); *Phillips Petroleum*, 125 USPQ at 577 ("The question of similarity is ordinarily one of degree."). Where, as here, the goods are legally identical in part, the degree of similarity needed to result in likely confusion declines. *See, e.g.*, *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 101 USPQ2d 1713, 1721 (Fed. Cir. 2012) ("[I]f the parties' goods are closely related, a lesser degree of similarity between the marks may be sufficient to give rise to a likelihood of confusion.") (citations omitted).

Here, both ECHO DE LYNCH BAGES and ECHO D'ANGÉLUS begin with the word ECHO. First words are generally important in creating a commercial impression. *See, e.g.*, *Century 21 Real Estate Corp. v. Century Life of Am.*, 970 F.2d 874, 23 USPQ2d 1698, 1700 (Fed. Cir. 1992) ("Century" is the "dominant element of CENTURY LIFE OF AMERICA due to applicant's disclaimer of the rest of its mark" and because "upon encountering each mark, consumers must first notice this identical lead word"). But not always. In *In re Hearst Corp.*, 982 F.2d 493, 494, 25 USPQ2d 1238 (Fed. Cir. 1992), the Court rejected the uncritical use of the "first word, dominant word" guideline where the marks were VARGAS and VARGA GIRL, because in that case, assessing the VARGA GIRL mark as a whole, it was clear that the word GIRL following VARGA made a significant contribution to the connotation of the mark, distinguishing it from VARGAS even for identical goods. 25 USPQ2d at

1239; *see also id.* n.2 (listing decisions presenting similar situations). As explained below, each of the marks at issue consists of a unitary expression, such that the shared word at the beginning of each does not dominate either mark.

Here, the word ECHO in both marks is followed by the term "de" or the contraction form "d' " and the marks end with different terms (ANGÉLUS and LYNCH BAGES). It appears that ANGÉLUS and LYNCH BAGES are the parties' "house marks." Applicant owns four registrations consisting of or comprising the term ANGELUS:

- **ANGELUS** (Reg. No. 2905793 for wines);[39]

-  (Reg. No. 2965659 for "wine of appelation [sic] of origin produced in France, red wines");[40]

- CARILLON D'ANGELUS (Reg. No. 5377461 for wines);[41] and

- TEMPO D'ANGELUS (Reg. No. 6733812 for wines).[42]

Opposer's name is Chateau Lynch Bages, and its letterhead uses LYNCH BAGES.[43] Opposer's answers to Applicant's first set of interrogatories indicate that "ECHO DE LYNCH BAGES" translates to "echo of Lynch Bages."[44] In addition, the parties' house marks are emphasized by "d' " and "de," and we take judicial notice

---

[39]  26 TTABVUE 18-21.

[40]  *Id.* at 13-17.

[41]  *Id.* at 12-14.

[42]  *Id.* at 8-10.

[43]  25 TTABVUE 33.

[44]  *See* 26 TTABVUE 34.

that these terms are forms of the French preposition that mean "of,"[45] which tends to draw focus to the term that follows. As Opposer noted in its answer to Applicant's interrogatories, "Opposer's Mark identifies a 'second wine' compared to Opposer's grand cru and therefore the word 'echo' naturally arose as an identifier."[46] In other words, Opposer uses ECHO DE as a mean to conjure its house mark LYNCH BAGES used for its "grand cru." Similarly, Applicant's initial letter to Opposer indicated that it, too, wanted the terms ECHO D' to evoke the house mark that followed, ANGELUS.[47]

In assessing the effect of house marks, *Knight Textile Corp. v. Jones Investment Co.*, 75 USPQ2d 1313 (TTAB 2005), is instructive. There, the *du Pont* factors other than the similarity or dissimilarity of the marks were somewhat similar to this case:

> We find that applicant's goods, as identified in the application, are in part identical to and otherwise highly similar to the goods identified in opposer's pleaded registration. We also find that the parties' respective goods are marketed in the same trade channels and to the same classes of purchasers, i.e., in all normal trade channels and to all normal classes of purchasers for such goods. We find that there is no evidence in the record showing any third-party use of similar marks on similar goods; the third-party registrations made of record by applicant are not evidence, under the sixth *du Pont* factor ("the number and nature of similar marks in use on similar goods"), that the marks

---

[45] *See* https://www.collinsdictionary.com/us/dictionary/french-english/de (accessed Sept. 26, 2023). We note that this is confirmed in Opposer's response to Applicant's Interrogatory 2, in which Opposer stated that "[t]he translation of Opposer's Mark is 'echo of Lynch Bages.'" 26 TTABVUE 34; *see also* Reg. No. 3747054 (stating: "The English translation of 'Echo de Lynch Bages' in the mark is Echo of Lynch Bages.").

[46] *Id.* We understand Opposer's reference to its "grand cru" to be a reference to be the wine identified simply as LYNCH BAGES.

[47] *See* 25 TTABVUE 32 ("The word 'ECHO' has naturally imposed itself on us because it evokes the sound of bells and the prayer of the Angelus, symbol of our domain.").

> depicted therein are in use or that they are familiar to purchasers. The evidence (or lack thereof) pertaining to these *du Pont* factors weighs in opposer's favor in our likelihood of confusion analysis.

*Id.* at 1315 (citation omitted). The remaining issue was the similarity of the marks: (NORTON MCNAUGHTON ESSENTIALS and ESSENTIALS). The Board began by noting that our primary reviewing Court had previously held that:

> [T]here is no arbitrary rule of law that if two product marks are confusingly similar, likelihood of confusion is not removed by use of a company or housemark in association with the product mark. Rather, each case requires a consideration of the effect of the entire mark including any term in addition to that which closely resembles the opposing mark.

*See id.* (quoting *New England Fish Co. v. Hervin Co.*, 511 F.2d 562 , 184 USPQ 817, 819 (CCPA 1975); *accord* 4 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 23:43 (5th ed.) Sept. 2023 update). There, even though only the applicant's mark incorporated its house mark, the Board found that the differences in the marks outweighed the other factors that pointed in the direction of confusion. *See id.* at 1316-17.[48]

*Knight Textile* is similar to most cases discussing the effect of house marks, in that it involved only one party that incorporated a house mark into its mark. Here, however, we have the unusual situation where **both** parties' marks incorporate house marks. While none of our precedents nor those of our primary reviewing court seem

---

[48]  We acknowledge that, in *Knight Textile*, the common portion was found to be highly suggestive, whereas here we declined to find significant conceptual weakness of the common term ECHO. But we see that difference as being counterbalanced by the fact that here, unlike in *Knight Textile*, **both** parties' marks incorporate their house marks.

to contain examples of cases where both marks comprise both a shared word and the parties' respective house marks, there have been a few infringement cases decisions presenting that situation. *See, e.g.*, *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 61 USPQ2d 1688, 1690-91 (9th Cir. 2002) (no likelihood of confusion as between "Critter Clinic—Where Pets Are Family," and "Petsmart—Where Pets Are Family"); *Lindy Pen Co. v. Bic Pen Corp.*, 725 F.2d 1240, 226 USPQ 17, 19-20 (9th Cir. 1984) (no likelihood of confusion as between AUDITOR'S and AUDITOR'S FINE POINT for pens where the similar marks always appeared with the parties respective house marks); *Vitarroz Corp. v. Borden, Inc.*, 644 F.2d 960, 968-69, 209 USPQ 969, 976-77 (2d Cir. 1981) (no likelihood of confusion as between BRAVO'S and BRAVOS for chips and crackers, respectively, where each mark appeared only with the parties respective house marks); *Am. Dairy Queen Corp. v. W.B. Mason Co.*, 2022 WL 2760024, at \*65-68 (D. Minn. 2022) (no likelihood of confusion found as between DAIRY QUEEN BLIZZARD frozen treat sold to consumers versus W.B. MASON BLIZZARD bottled spring water sold to business offices).

Bringing all of the foregoing legal guidelines and observations together, the marks lead with the identical term ECHO, which contributes to a similarity in appearance, sound, and connotation. But the remainder of the marks are visually and aurally different. ECHO has some conceptual weakness in connection with the goods at issue, and its use in these marks is part of unitary expressions that create different overall meanings and commercial impressions. Moreover, the use of ECHO with D' and DE followed by the parties' house marks contributes significantly to the overall

commercial impressions of the marks as invoking the respective house marks. We think that, in this unusual case, where both parties' marks incorporate different-appearing house marks as part of unitary expressions, and where the common term between the marks is somewhat weak, the dissimilarities outweigh the similarities in the respective marks.

6.   Weighing the relevant *du Pont* factors.

Our last step is to weigh the findings we have made on the individual *du Pont* factors together to make the ultimate conclusion whether confusion is likely or unlikely. *See, e.g.*, *Charger Ventures*, 2023 USPQ2d 451, at *7. On the evidence before us, we find several *du Pont* factors weighing in favor of a conclusion that confusion between the marks is likely: the goods are identical in part; the channels of trade are not limited and so are presumed identical; and the classes of customers are presumed identical as well. Tilting the calculus in neither direction are purchaser care and sophistication. Weighing against a conclusion that confusion is likely the fact that the dissimilarities between the marks outweigh the similarities. Also weighing against a conclusion that confusion is likely—but only to some degree—is the degree of conceptual weakness of the common term ECHO. But we do not mechanically tally how many factors weigh for or against confusion being likely. *See, e.g.*, *Citigroup Inc. v. Cap. City Bank Grp., Inc.*, 637 F.3d 1344, 98 USPQ2d 1253, 1261 (Fed. Cir. 2011) ("Citigroup's approach of mechanically tallying the *DuPont* factors addressed is improper, as the factors have differing weights."). Here, in light of all the evidence before us, we find the dissimilarities in the marks to be a "predominant" factor. *See,*

*e.g.*, *Odom's Tenn. Pride Sausage, Inc. v. FF Acquisition, L.L.C.*, 600 F.3d 1343, 93 USPQ2d 2030, 2032 (Fed. Cir. 2010)), and the overall balance of factors weighs against likely confusion.

IV.    Conclusion

**Decision:** The Opposition is sustained in part as to "hard ciders; digestive beverages, namely, alcohols being alcoholic beverage except beers, and liqueurs; beverages in the nature of spirits; alcoholic extracts and essences" because Applicant lacked the requisite bona fide intent to use the mark as to those goods. These goods shall be deleted from the application.

The Opposition under Section 2(d), 15 U.S.C. § 1052(d), is dismissed as to the remaining goods, "Alcoholic beverages except beers" and "wines." The application will proceed as to those goods.

| ESTTA Tracking number: | **ESTTA1324262** |
|---|---|
| Filing date: | **11/24/2023** |

### IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
### BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

| | |
|---|---|
| Proceeding no. | 91268431 |
| Party | Plaintiff<br>Chateau Lynch-Bages |
| Correspondence address | MICHAEL CULVER<br>MILLEN WHITE ZELANO & BRANIGAN PC<br>2200 CLARENDON BOULEVARD<br>SUITE 1400<br>ARLINGTON, VA 22201<br>UNITED STATES<br>Primary email: culver@mwzb.com<br>Secondary email(s): docketing@mwzb.conm<br>703-243-6333 |
| Submission | Appeal or Cross-Appeal of Final Board Decision |
| Notice of appeal to | U.S. Court of Appeals for the Federal Circuit |
| Certificate of service | The undersigned hereby certifies that a copy of this submission has been served upon all parties, at their address of record by Email on this date. |
| Filer's name | Michael Culver |
| Filer's email | culver@mwzb.com |
| Signature | /michaelculver/ |
| Date | 11/24/2023 |
| Attachments | Notice of Appeal 11-24-2023.pdf(592815 bytes ) |

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
## BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

| | |
|---|---|
| Chateau Lynch-Bages )<br>)<br>    Opposer )<br>)<br>)<br>    v. )<br>)<br>)<br>Chateau Angelus S.A. )<br>)<br>    Applicant )<br>_____ ) | Opposition No. 91268431<br>Mark:  Echo d'Angélus<br>App. Serial No. 79285170 |

## NOTICE OF APPEAL TO THE UNITED STATES
## COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Pursuant to 15 U.S.C. § 1071(a)(2) and Fed. Cir. R. 15(a)(1), Opposer hereby appeals the final decision dated September 28, 2023 of the Trademark Trial and Appeal Board dismissing the above-identified opposition (copy attached). A copy of this Notice of Appel is simultaneously being filed with the Clerk of the Court of the Court of Appeals for the Federal Circuit.

Date:  November 24, 2023      By _Michael Culver_

Michael Culver
Millen, White, Zelano & Branigan, P.C.
2200 Clarendon Blvd., Suite 1400
Arlington, VA 22201
Tel: 703-243-6333
culver@mwzb.com
Attorney for Appellants

Certificate of Service

    This is to certify that a copy of the foregoing was served or provided this 24th day of November 2023 on the following as follows:

Via Email:

John S. Egbert
Michael F. Swartz
Kevin S. Wilson
Egbert, McDaniel & Swartz, PLLC
1001 Texas Ave., Suite 1250
Houston, Texas 77002
(713)224-8080
mail@emsip.com; kwilson@emsip.com; mswartz@emsip.com

Via ESTTA:

Trademark Trial and Appeal Board

Via First-Class Mail:

Office of the General Counsel
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, Virginia 22313-1450


By: *Michael Culver*
      Attorney for Appellants