**2024-1197**

*United States Court of Appeals for the FederalCircuit*

CHATEAU LYNCH-BAGES,
*Appellant,*

*v.*

CHATEAU ANGELUS S.A.,
*Appellee*

*On Appeal from the United States Patent and Trademark
Office, Trademark Trial and Appeal Board Opposition No.*
*91268431*

**CORRECTED BRIEF FOR APPELLEE**

David C. Brezina
Ladas & Parry, LLP\
224 S Michigan Ave
Suite 1600
Chicago, IL 60604
(312) 427-1300

*Counsel for Appellee
Chateau Angelus
SA*

April 19, 2024

FORM 9. Certificate of Interest

Form 9 (p. 1)
March 2023

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

**Case Number** 2024-1197

**Short Case Caption** Chateau Lynch-Bages v. Chateau Angelus SA

**Filing Party/Entity** Chateau Angelus SA

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 04/19/2024

Signature: /s/ David C Brezina

Name: David C Brezina

FORM 9. Certificate of Interest

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☑ None/Not Applicable |
| Chateau Angelus SA | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐    Additional pages attached

FORM 9. Certificate of Interest

Form 9 (p. 3)
March 2023

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑   None/Not Applicable          ☐   Additional pages attached

| | | |
|---|---|---|
| David C Brezina, Ladas & Parry LLP | | |
| John S Egbert, Egbert, McDaniel & Schwartz, PLLC | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐   Yes (file separate notice; see below)   ☑   No   ☐   N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑   None/Not Applicable          ☐   Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

Contents

Table of Contents …………………………………………………… i

Table of Authorities …………………………………………………. ii

**Statement of Related Cases** ................................................................ 1

**Statement of the Case** ...................................................................... 1

**Summary of Argument** ..................................................................... 3

**Argument** ....................................................................................... 4

**Standards for Determining Similarity of Marks** ............................. 4

**Ample Evidence Supports Concluding Differences Make Confusion Unlikely** ................................................................................................ 5

**House Mark Terminology Is a Distraction** ...................................... 7

**Third Party Registrations Support Concluding ECHO Is Common** ............. 8

**Third Party Registrations for Wines and Spirits** ............................. 8

**Third Party Registrations Show ECHO Is Neither Strong Nor Dominant** .... 9

**Applying the General Recollection Rules Confusion Is Unlikely** ................... 9

**"Echo" Points to Something Else** .....................................................10

**Decisions Depend On The Understanding of Terms and What Relative Information is Presented** ......................................................................10

**Lynch-Bages Relies On Cases With Marks Not Comparable to Those Here** 13

**The Unitary Expression Evaluation Reconnects the Distinctive "House" Components and the Introductory Component "Echo of".**............................17

**Judicial Notice** ................................................................................19

**Extra Steps Nevertheless Lead To A Correct Conclusion** .............................20

**Where Dissection Matters** ................................................................20

**Lynch-Bages' Other Inapposite Cases** ..........................................................21

**The Board Properly Weighed the *DuPont* Factors** ........................................22

**Table of Authorities**

**Cases**

*American Cruise Lines, Inc., In re:*, 128 USPQ2d 1157 Serial No. 8704002 (TTAB 2018) ................................................................................................16

*American Dairy Queen Corporation v. W.B. Mason Co., Inc*. 543 F.Supp.3d 695 (D Minn., 2021) ..........................................................................................7, 22

*Bottega Veneta, Inc. v. Volume Shoe Corp.*, 226 USPQ 964 (TTAB 1985)...........15

*Ceccato v. Manifattura Lane Gaetano Marzotto & Figli S.p.A.,* 32 USPQ2d 1192 (TTAB 1994) ..............................................................................................14

*Champagne Louis Roederer S.A. v.  Delicato Vineyards*  148 F.3d 1373 (Fed. Cir. 1998) ......................................................................................................11

*Chateau Lynch-Bages v. Chateau Angelus S.A.,* 2023 TTAB LEXIS 408 (Trademark Trial & App. Bd. September 28, 2023) ............................................................... 1

*China Healthways Institute, Inc. v. Wang,* 491 F.3d 1337, 1340 (Fed. Cir. 2007). 16

*Dena Corp. v. Belvedere Int'l Inc.,* 950 F.2d 1555, 1561 (Fed. Cir. 1991) ...........17

*Giant Food, Inc. v. Nation's Foodservice, Inc.*, 710 F.2d 1565, 1569(Fed. Cir. 1983) ........................................................................................................ 5

*Grant v. Royal,* 886 F.3d 874, 945 (10th Cir. 2018) .............................................24

*Hard Rock Café Licensing Corp. v. Elsea*, 48 USPQ2d 1400, 1405 (TTAB 1998) ................................................................................................................19

*In re AGE Bodegas Unidas, S.A.*, 192 USPQ 326, 326 (TTAB, 1977) ................. 9

*In re Bed and Breakfast Registry*, 791 F.2d 157 (Fed. Cir. 1986) ..........................13

*In re Detroit Athletic Co.*, 903 F.3d 1297 (Fed. Cir. 2018) ...................................17

*In re Kysela Pere et Fils Ltd.*, 98 USPQ2d 1261, 1265 (TTAB 2011)................... 9

*In re Majestic Distilling Co.*, 315 F.3d 1311 (Fed. Cir. 2003) ............................... 9

In re Mighty Leaf Tea, 601 F.3d 1342, 1346 (Fed. Cir. 2010)............................... 4

*In re Sailerbrau Franz Sailer*, 23 USPQ2d 1719, 1720 (TTAB 1992) ................. 9

*In re Viterra Inc.,* 671 F.3d 1358, 1362 (Fed. Cir. 2012)......................................16

*Ironhawk Technologies, Inc. v. Dropbox Technologies, Inc.,* 2 F.4th 1150, 1165 (9th Cir. 2021) ........................................................................................22

*Jackpocket, Inc. v. Lottomatrix NY LLC*, 2024 U.S. App. LEXIS 6383, (2d Cir. 2024) ........................................................................................................16

*Keebler Co. v. Murray Bakery Products*, 866 F.2d 1386 (Fed. Cir. 1989)............13

*Lindy Pen Co. v. Bic Pen Corp.*, 725 F.2d 1240, 1245 (9th Cir. 1984) .................22

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.,* 454 F.3d 108, 117 (2d Cir. 2006) ........................................................................................................16

*Monarch Wine Co. v. Hood River Distillers, Inc.*, 196 USPQ 855, 857 (TTAB, 1977) ........................................................................................................ 9

*Nike Inc. v. WNBA Enterprises LLC*, 85 USPQ2d 1187, 1192 n.9 (TTAB 2007) ..19

*Odom's Tennessee Pride Sausage, Inc. v. FF Acquisition, LLC*, 600 F.3d 1343 (Fed. Cir. 2010) .................................................22

*Opryland USA Inc. v. The Great American Music Show Inc.*, 970 F.2d 847 (Fed. Cir. 1992) ..............................................23

*Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369 (Fed. Cir. 2005)...........................................10, 11

*Red Label Music Publ., Inc. v. Chila Prods.*, 388 F. Supp. 3d 975, 979 (ND Ill 2019.............................................................25

*Schieffelin & Co. v. Molson Cos.*, 9 USPQ2d 2069, 2073 (TTAB 1989)............... 9

*Shen Manufacturing Co. v. Ritz Hotel Ltd.*, 393 F.3d 1238 (Fed. Cir. 2004) .........23

*Syndicat Des Proprietaires Viticulteurs De Chateauneuf-Du-Pape v. Pasquier DesVignes* 107 USPQ2d 1930 (TTAB 2013) .....................................................12

## Statement of Related Cases

No other appeals in this case have previously been before this or any other appellate court. No other case in this or any other court will directly affect or be directly affected by this Court's decision in this appeal.

## Statement of the Case

Opposer, Appellant Chateau Lynch-Bages ("Lynch-Bages) asserted its registered mark, ECHO DE LYNCH BAGES (in standard characters) against Applicant Appellee Chateau Angelus S.A.'s ("Angelus") mark ECHO D'ANGÉLUS[1] (in standard characters). Appx34 and Appx39. Both marks are used for similar goods for the purpose of this appeal — wines. *Id.*

The Board considered the nature of the goods, channels of trade and classes of customers favored Lynch-Bages. *Chateau Lynch-Bages v. Chateau Angelus S.A.,* 2023 TTAB LEXIS 408 (Trademark Trial & App. Bd. September 28, 2023) Appx15, Appx16. Purchaser care was neutral. Appx26.

Because the differences in the marks predominated, the Board found no likelihood of confusion after considering the marks in their entirety. Lynch-Bages would prefer the Board have dissected the marks and giving dominant weight to the common word ECHO. The connection between ECHO and the distinctive components was important.

---

[1] The word ANGELUS will be used without diacritical marks unless the reference is to the exact mark ECHO D'ANGÉLUS.

But the Board did not directly say the meaning of ECHO – an echo is never an original source –  would point to the original source, LYNCH BAGES or ANGELUS.

The Board considered third party registrations for commonality of the term,  not use or strength. Appx19. Third party registrations for related goods show low right to exclude others, but the Board did not discuss this factor.

The Board said Lynch-Bages' mark was "presumed to be at least suggestive" *Id.,* n.38 and "declined to find significant conceptual weakness of the common term ECHO" Appx24, n.48. The "conceptual weakness" is consistent with "echo" referring to or originating from some other source.

Lynch-Bages relied on its registration, discovery responses, an expert opining, Appx40 – Appx42, that products would be displayed proximate one another, and a letter, Appx56 – Appx57.  Derivation of Applicant's mark: the place from which its grapes were harvested was where Angelus bells could be heard — "echo d'Angelus" — is in the letter.

Angelus' Notice of Reliance with discovery responses including an Interrogatory answer identifying ECHO DE LYNCH BAGES as a "second" wine and "echo" indicates it "naturally" follows from the grand cru wine from Lynch-Bages." SAppx79, SAppx81

Angelus' background, marketing information and third party registrations are also in the Exhibits to the Notice of Reliance. Sappx98 – SAppx178

The Board described the distinctive components LYNCH BAGES and ANGELUS as "house marks", Appx 22.   While the marks were insufficiently similar, the Board did not specifically state the meaning of ECHO in context is a secondary wine followed by the true source.   The conclusion "the dissimilarities outweigh the similarities in the respective marks" Appx26 is supported by substantial evidence correctly applying the law.

Lynch-Bages uses a red herring styling the "house mark" comment as error because of a *DuPont (In re E. I. Du Pont de Nemours & Co.*, 476 F.2d 1357 (CCPA 1973))  factor not discussed.

The Board correctly concluded no likelihood of confusion, dismissing the 2 (d) case for wine. Appx27.

Angelus did not cross appeal regarding intent to use the mark on certain "non-wine" goods.

## Summary of Argument

The marks — ECHO DE LYNCH BAGES and ECHO D'ANGÉLUS obviously differ in identifying the respective sources, … LYNCH BAGES and … ANGELUS.   The leading words — ECHO DE and ECHO D' — are essentially identical and mean "Echo of …". (Appx39 "The English translation of "Echo de Lynch Bages" in the mark is Echo of Lynch Bages"; SAppx15 "The English translation of "ECHO D'ANGÉLUS" is "ECHO OF ANGELUS".")

By definition an echo has some other source.  Appx87  By admission ("Opposer's Mark identifies a "second wine" compared to Opposer's grand cru and therefore the word "echo" naturally arose as an identifier." SAppx80) the source is Lynch-Bages in Lynch-Bages' mark – and Angelus, in Angelus' mark. With that meaning pointing to the second, different, components, the Board correctly decided confusion is unlikely.

Considering the marks in their entireties all the similarities and differences including the first word emphasizing the second, the conclusion of no likely confusion is correct.  A *DuPont* factor like significant differences is enough basis to conclude confusion is unlikely.

## Argument

## Standards for Determining Similarity of Marks

 Lynch-Bages urges a "first word is dominant" rule.  Likely confusion analysis decisions give rise to a number of unhelpful rules like "no side by side comparison" the "first word dominates", "no dissection" and house marks either lessen or add to confusion.   (see "No mechanical rule determines likelihood of confusion, and each case requires weighing of the facts and circumstances of the particular mark. In re Shell Oil Co., 992 F.2d 1204, 1206 (Fed. Cir. 1993)" In re Mighty Leaf Tea, 601 F.3d 1342, 1346 (Fed. Cir. 2010))  The real task is to determine, in the Trademark Office and before the Trademark Trial and Appeal

Board, what consumers in the marketplace will be thinking. *Giant Food, Inc. v. Nation's Foodservice, Inc.*, 710 F.2d 1565, 1569 , 218 USPQ 390, 393 (Fed. Cir. 1983) ("In considering the question of likelihood of confusion, the only relevant application of the law to the facts is in the context of the marketplace, because that is where confusion of prospective purchasers would or would not occur.").

**Ample Evidence Supports Concluding Differences Make Confusion Unlikely**

There are at least four reasons to conclude ECHO is secondary, all consistent and they corroborate one another.

- Lynch-Bages put into evidence Angelus' interpretation of ECHO D'ANGELUS: "As you may know, it is a very old plot where the winegrowers could hear the Angelus ringing simultaneously by the 3 surrounding churches which gave its name to our vineyard. The word "ECHO" has naturally imposed itself on us because it evokes the sound of bells and the prayer of the Angelus, symbol of our domain." (Appx56 – Appx57)

- This is consistent with Lynch-Bages' mark: "Opposer's Mark identifies a "second wine" compared to Opposer's grand cru and therefore the word "echo" naturally arose as an identifier." SAppx79, SAppx81

5

- The definition of "echo" includes: "1. Repetition of a sound by reflection of sound waves **from a** surface. … 3. Any repetition or imitation **of something**, …. 4. One who **imitates another**, as in opinions, speech, or dress. Mod fashion is **an echo of** Edwardian style.…" (Appx87, emphasis added) so it will always be understood to connect to something else.

- Both ECHO DE and ECHO D' have the English translation "Echo of" (Appx2, Appx22, Appx23, Appx39, SAppx15, SAppx22, SAppxd36, SAppx52, SAppx79, SAppx88) pointing to something else.  Appx87.

- LYNCH BAGES and ANGELUS will be understood as the main source identifiers – the places "echoed": "evokes … Angelus, symbol of our domain") (Appx56 – Appx57) "a "second wine" compared to Opposer's grand cru and therefore the word "echo" naturally arose as an identifier." (SAppx79, SAppx81)

The differences mean confusion is unlikely.

The Board's correct conclusion after identifying the primary source identifiers as "house marks" in the comparison of marks factor was:

Bringing all of the foregoing legal guidelines and observations together, the marks lead with the identical term ECHO, which contributes to a similarity in appearance, sound, and [*33]  connotation. But the remainder of the marks are visually and aurally different. ECHO has some conceptual weakness in connection with the goods at issue, and its use in these marks is

6

part of unitary expressions that create different overall meanings and commercial impressions. Moreover, the use of ECHO with D' and DE followed by the parties' house marks contributes significantly to the overall commercial impressions of the marks as invoking the respective house marks. We think that, in this unusual case, where both parties' marks incorporate different-appearing house marks as part of unitary expressions, and where the common term between the marks is somewhat weak, the dissimilarities outweigh the similarities in the respective marks.

**House Mark Terminology Is a Distraction**

Lynch-Bages suggests error in the way the Board labeled the main components of the two marks "house marks."  But the Board did it considering the similarity of the marks factor – DuPont factor one.   Lynch-Bages makes an effort to focus on the place in *DuPont* that mentions "house", "product" and "family" marks – parenthetically – under the *DuPont* factor of "variety" of products.

Academically, under similarity of the marks, it may be that the facts are dissimilar from the typical "house mark" case.  Those often involve graphic separation, absent here. *Jackson Family Farms, LLC  v. Grand Domaines Du Littoral*, 2023 U.S. App. LEXIS 32043, 2023 USPQ2d 1445, 2023 WL 8429827 (Fed Cir 2023) had an entire wine label, the "house mark" being larger.  The term at issue being a slogan in French VÉRITÉ DU TERROIR found insufficiently similar to VÉRITÉ for likely confusion to be found when used on wines.

*American Dairy Queen Corporation v. W.B. Mason Co., Inc*. 543 F.Supp.3d 695 (D Minn., 2021) stated:  "The use of house marks in a sufficiently prominent

manner may allow consumers to distinguish between two products, Gen. Mills, 824 F.2d at 627, and house marks are one factor to consider in the analysis of a likelihood of confusion. See Woodroast Sys., Inc. v. Restaurants Unlimited, Inc., 793 F. Supp. 906, 914 n.14 (D. Minn. 1992)" There the main and "house" marks were graphically separate.  Here the "house" marks are the "main" components, the common term being less significant.

### Third Party Registrations Support Concluding ECHO Is Common

The Board was not looking to third party registrations to showing ECHO was "weak" from third party "use."  The Board limited its conclusion:

> "Here, there are thirteen (13) such registrations. While we do not think this amounts to a "considerable" number or that use of ECHO is "ubiquitous" in this field, neither can we discount this showing entirely.
> * * *
> While Opposer argues that the ECHO portion of its mark is "arbitrary ... or, at worst, suggestive," 38 it offers no evidence of either the conceptual (inherent) or commercial strength of its mark or of the ECHO component. Accordingly, on balance, we think these third-party registrations reflect that ECHO is a fairly commonly-chosen term in the field, and this [*25] weighs somewhat against finding that confusion is likely. (Appx19 – Appx20)

Lynch-Bages' contention ECHO was "arbitrary" (implicitly toward the "strong" side of a confusion taxonomy), is unsupported.

### Third Party Registrations for Wines and Spirits

Lynch-Bages appears to argue that not all the registrations were for wines.

However, most list wines or use a more broad term that would include wine. A

couple are for "whiskey" but that is related enough.  See *In re Majestic Distilling Co.*, 315 F.3d 1311 (Fed. Cir. 2003) (malt liquor related to tequila); *In re Kysela Pere et Fils Ltd.*, 98 USPQ2d 1261, 1265 (TTAB 2011) (beer related to wine); *In re Sailerbrau Franz Sailer*, 23 USPQ2d 1719, 1720 (TTAB 1992) (beer related to wine); *Schieffelin & Co. v. Molson Cos*., 9 USPQ2d 2069, 2073 (TTAB 1989) (Cognac brandy related to malt liquor, beer and ale); *Monarch Wine Co. v. Hood River Distillers, Inc.*, 196 USPQ 855, 857 (TTAB, 1977) (distilled spirits related to wine); *In re AGE Bodegas Unidas, S.A.*, 192 USPQ 326, 326 (TTAB, 1977) (wines related to whiskey).   Non-relatedness of the third party registrations is a distraction.

### Third Party Registrations Show ECHO Is Neither Strong Nor Dominant

Lynch-Bages never presented any evidence its famous grand cru vineyard name was less famous compared to a "strong" or "dominant" ECHO.  There was evidence ECHO was "common", so not strong.

### Applying the General Recollection Rules Confusion Is Unlikely

The intent of both Lynch-Bages and Angelus to evoke their main marks by using ECHO applies strongly in the "general recollection" model.  Using a general recollection, the distinctive (and different) components can be expected to be recalled and recognized.

## "Echo" Points to Something Else

Consistent with the dictionary definition, Appx87, consumers in a retail store, Appx41, whether they see the products or not, would understand "echo" points to something else. It indicates a "second" wine, SAppx 79, Sappx81 related to a "first." ECHO is both an English word and French.   LYNCH BAGES and ANGELUS are not English.   They are closer to "arbitrary" strong mark components.   This is consistent with prior interpretations.

## Decisions Depend On The Understanding of Terms and What Relative Information is Presented

A case cited *passim* in Lynch-Bages' brief is *Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369 (Fed. Cir. 2005)  the similarity between VEUVE ROYALE and VEUVE CLICQUOT PONSARDIN for sparkling wines is not projectable to the present facts. In *Palm Bay* the Opposer's mark VEUVE CLICQUOT PONSARDIN found CLICQUOT the dominant source indicator.  The other words are quite different than those presented here.  VEUVE meant "widow" – a French word not proven known in the USA.   Here the common word is ECHO which is known.   VEUVE CLICQOUT was originally a particular widow, surname Clicquot.  ROYALE does not identify a particular person, so contributes no identification that detracts from finding similarity:

- VEUVE is not known and might as well be arbitrary;

- ECHO is known, and known to point to something else;

- CLICQUOT is an identifier, but follows the arbitrary VEUVE;

- LYNCH BAGES follows ECHO pointing to it as a source;

- ROYALE has no identification function;

- ANGELUS is a source identifier, a "family" of marks, ECHO pointing to it.

By analyzing the meaning and understanding of the words at issue, the present case supports no likelihood of confusion, while the different meanings and understanding in *Palm Bay* convey the opposite information, yielding the opposite result.

In *Chatam Intern. Inc. supra* the common word was English, but the following words (GOLDSCHLEGER v GOLDSTRASSER) were phonetically similar. The non-English words here are dissimilar.

*Champagne Louis Roederer S.A. v. Delicato Vineyards* 148 F.3d 1373 (Fed. Cir. 1998) affirmed the Board finding of no likelihood of confusion between mark CRYSTAL CREEK for wine and marks CRISTAL for wine and CRISTAL CHAMPAGNE for champagne, where Board relied solely on dissimilarity of marks:

> Roederer suggests, first, that it was an error of law for the Board to rely solely on the dissimilarity of the marks in evaluating the likelihood of confusion and to fail to give surpassing weight to the other DuPont factors,

all of which were found to favor Roederer. We note, however, that we have previously upheld Board determinations that one DuPont factor may be dispositive in a likelihood of confusion analysis, especially when that single factor is the dissimilarity of the marks. See, e.g., Kellogg Co. v. Pack'em Enters., 951 F.2d 330, 332-33 (parallel citation omitted) (Fed. Cir. 1991) (stating that  "we know of no reason why, in a particular case, a single DuPont factor may not be dispositive" and holding that "substantial and undisputed differences" between two competing marks justified a conclusion of no likelihood of confusion on summary judgment); Keebler Co. v. Murray Bakery Prods., 866 F.2d 1386, 1388, (parallel citation omitted) 1739 (Fed. Cir. 1989) (agreeing with the Board that the "more important fact for resolving the issue of likelihood of confusion . . . is the dissimilarity in commercial impression between the marks"). We have not been persuaded that, on this record, the Board erred in concluding that the marks' dissimilarities were dispositive, notwithstanding due weight being accorded to the DuPont factors found in Roederer's favor.

*Syndicat Des Proprietaires Viticulteurs De Chateauneuf-Du-Pape v. Pasquier DesVignes* 107 USPQ2d 1930 (TTAB 2013) considered CHATEAUNEUF-DU-PAPE CONTROLE and CHEMIN DES PAPES for wine – the common element the French word PAPE (or PAPES) stating:

> "When viewed **in their entireties**, giving due weight to the components of each mark, and taking into account the weakness of the term "Chateauneuf-du-Pape Contrôlé," and the weakness of "pape" due to other uses, the presence of the term "pape" as the only  common element in both parties' marks is an insufficient basis for finding applicant's mark to create a likelihood of confusion. We find instead that confusion is not likely. Indeed, **the first du Pont factor outweighs all of the other factors**." (emphasis added)

Here ECHO is known in English, common, and weak because of meaning — more weak than PAPE.

**Lynch-Bages Relies On Cases With Marks Not Comparable to Those Here**

Lynch-Bages cites a number of decisions with marks having different relative meaning and recognition.    Lynch-Bages begins emphasizing "the leading component—echo de and echo d' " but nowhere addresses the meaning "echo of". Lynch-Bages argues *Kellogg Co. v. Pack 'em Enters., Inc.,* 951 F.2d 330 (Fed.Cir.1991) (FROOTEE ICE not confusingly similar to FRUIT LOOPS) held "fruity" is descriptive but "echo" is not.  This ignores the meaning of "echo" followed by the source which is echoed.    Because "echo" refers to something else, it is even less likely to be recognized as causing confusion than descriptive words. *Keebler Co. v. Murray Bakery Products*, 866 F.2d 1386 (Fed. Cir. 1989) (PECAN SANDIES not confusingly similar to PECAN SHORTEES); *In re Bed and Breakfast Registry*, 791 F.2d 157 (Fed. Cir. 1986) (BED AND BREAKFAST REGISTRY not confusingly similar to BED AND BREAKFAST INTERNATIONAL).  The difference between LYNCH BAGES and ANGELUS is greater than the difference between SANDIES and SHORTIES or REGISTRY and INTERNATIONAL.

Lynch-Bages argues its main mark LYNCH BAGES is weak because it "combines first a surname with a geographical place name. See Appx68-69 (Applicant's Notice of Reliance, Exhibit B, Opposer's Responses to Applicant's Requests for Admission to Opposer nos. 9- 11)."   However ANGELUS is arbitrary

13

– yes, it identifies bells at a particular time of day, but that has nothing to do with wine or where it comes from/  Accepting Lynch-Bages' surname-place name argument, Angelus' mark may actually be stronger than Lynch-Bages'.  Even if one accepts the "place – where – the – bells – can – be —  heard" identification, Appx57, SAppx107, the term may be connected to a particular vineyard, but it is not "geographic" in the ordinary trademark sense.  That ANGELUS is distinctive and connotes a family of marks is apparent in Lynch-Bages' concession that there are "Applicant's other marks: Tempo D'Angelus, Carillon D'Angelus, and Chateau Angelus." Lynch-Bages brief at 11.

Admitting Angelus' four marks "do not require translation because each of the four leading words are recognized in American English (despite any French origin). Appx85-88. (Opposer's Second Notice of Reliance, dictionary definitions of carillon, chateau, echo, and tempo)" Lynch-Bages references *Ceccato v. Manifattura Lane Gaetano Marzotto & Figli S.p.A.,* 32 USPQ2d 1192 (TTAB 1994) where the first words in DUCA D'AOSTA and DUCA D'AREZZO are Italian, with no English cognate. The second portions start with D'A followed and end with a consonant and vowel.  By comparison, the only similarity here is ending in "S".  The level of similarity and recognition of the leading word is different than here:

- The word portions of both in *Ceccato* are foreign words, here they are not

- The last portion in *Ceccato* is the name of an Italian city which begins with an "A".  here they are not French cities, and they begin with different letters and overall are spelled and sound very differently;

- While Italian place names AOSTA and AREZZO in *Ceccato* may be unfamiliar to consumers, in the present case, consumers are going to know the second portions (after DE or D') are the things or sources being "echoed".

Applying *Ceccato* logic: assume consumers are familiar with Lynch-Bages' mark ECHO DE LYNCH BAGES – because of ECHO DE (ECHO OF) they know (correctly) it is a second wine from LYNCH BAGES.  Under that logic, when encountering Angelus' ECHO D'ANGÉLUS they would think it is a second wine from ANGELUS, which is true.  This is the opposite of confusion.

*Bottega Veneta, Inc. v. Volume Shoe Corp.,* 226 USPQ 964 (TTAB 1985) had all foreign words, unlike the marks here with ECHO and all it means. There was no leading word like ECHO suggesting the goods come from the identified source that follows "echo".

There is also the fact that the consumer may also compare directly when the wines retailed in the French wine sections of a retail store (Appx40-42 testimony of expert witness) in the real world marketing environment.  "In determining the similarity of the marks, "courts must analyze the mark's overall impression on a

consumer, **considering the context in which the marks are displayed** and the totality of factors that could cause confusion among prospective purchasers." *Louis Vuitton Malletier v. Dooney & Bourke, Inc.,* 454 F.3d 108, 117 (2d Cir. 2006) It is error to "inappropriately focus[] on the similarity of the marks in a side-by-side comparison instead of when viewed sequentially**" if the marks would not appear side by side "in the context of the marketplace**." Id." [emphasis added] *Jackpocket, Inc. v. Lottomatrix NY LLC*, 2024 U.S. App. LEXIS 6383, (2d Cir. 2024) Accord, *American Cruise Lines, Inc., In re:*, 128 USPQ2d 1157 Serial No. 8704002 (TTAB 2018) ("**persons who encounter the marks** would be likely to …") [emphasis added]  In the record, the marks as presented have all parts in the same font, size, style and in the marketplace may as well LYNCH BAGES or ANGELUS have equal weight following the introductory ECHO.

"[I]t is improper to dissect a mark when engaging in this analysis." *In re Viterra Inc.,* 671 F.3d 1358, 1362 (Fed. Cir. 2012). "The marks must be compared in their entirety, at least when the overall commercial impression is reasonably based on the entirety of the marks." *China Healthways Institute, Inc. v. Wang,* 491 F.3d 1337, 1340 (Fed. Cir. 2007). "Arguments to the effect that one portion of a mark possesses no trademark significance leading to direct comparison between only what remains is an erroneous approach." *Spice Islands, Inc. v. Frank Spice & Tea Co.,* 505 F.2d 1293, 1295 (CCPA 1974).  Lynch-Bages' argument to consider **only**

ECHO and ignore the main, famous, marks LYNCH BAGES and ANGELUS is flawed.

### The Unitary Expression Evaluation Reconnects the Distinctive "House" Components and the Introductory Component "Echo of".

While correct in evaluating the evidence, the Board's "unitary expression" discussion is unnecessary. Lynch-Bages uses it as another red herring. It logically brings back to a "mark in its entirety analysis" what could have been conceptually separated with discussion of "house marks." If we start with the Board must consider the mark in its entirety, *In re Detroit Athletic Co.*, 903 F.3d 1297 (Fed. Cir. 2018) all components need to be considered, ECHO combined with LYNCH-BAGES and ANGELUS.

It happens LYNCH-BAGES and ANGELUS may also serve as "house marks" as a category (not for *DuPont* factor nine purposes). Here they are part of "the marks" at issue. As "the marks" at issue, the elements should indeed, be "inseparable" and "create a single and distinct commercial impression." *Dena Corp. v. Belvedere Int'l Inc.,* 950 F.2d 1555, 1561 (Fed. Cir. 1991). Lynch-Bages cannot separate out the distinctive portions and leave analysis to only the comparison of the common elements. While making the accusation the Board "dissected Opposer's letterhead to arrive at a non-existent house mark" Lynch-Bages dissects the real marks, ignoring the source indicators that "echo of"

emphasizes and imagines "echo" is abstract.

Lynch-Bages continues arguing the ninth *DuPont* factor of whether **the mark** is a product mark, house mark or family mark requires focus on only part of the mark. The Board correctly noted Lynch-Bages had registrations of four marks, Angelus, Chateau Angelus, Carillon D'Angelus, and Tempo D'Angelus in which Angelus is common.   Sappx8 – Sappx14.  Lynch-Bages concedes these are a family of marks sharing a common term.  This further emphasizes the ability to recognize the distinctive portion of the mark at issue: there is no likely confusion where only ECHO is in common – the difference dominates.  "The mark" is not a "house mark" but it may be a "family mark."   The categorization does not change that consumers will know when the see ANGELUS it is not LYNCH BAGES.

Lynch-Bages criticizes the Board recognizing that the evidence shows both parties translations reflect "de" and "d' " mean, in French "of."  This is consistent and, indeed. "echo of" is even used as an example in Lynch-Bages' dictionary definition (Appx87).  With the foregoing in mind, noting there are "house mark components", in "the marks" the Board's statement is quite true: "In addition, the parties' house marks are emphasized by 'd' and 'de,'. … Appx22.   Judicial notice is unnecessary – the "emphasis" flows from meaning and Lynch-Bages put a dictionary definition in evidence.  Appx87

**Judicial Notice**

The Board chose to exercise "judicial notice" which is within its discretion. It may do so, for example, for dictionary definitions, *Hard Rock Café Licensing Corp. v. Elsea*, 48 USPQ2d 1400, 1405 (TTAB 1998) (dictionary definitions attached to applicant's brief were the proper subject of judicial notice) or changes in status of a registration, *Nike Inc. v. WNBA Enterprises LLC*, 85 USPQ2d 1187, 1192 n.9 (TTAB 2007) (judicial notice taken of current status of a registration owned by a party properly made of record, when status of registration changed between the time it was made of record and time case decided); Black & Decker Corp. v. Emerson Electric Co., 84 USPQ2d 1482, 1487-88 n.10-12 (TTAB 2007) so "noticing" the meaning of the ECHO followed by DE or D' – from the registration in the record, and the application subject to proceeding, is within the Board's authority.

The Board's rationale, "In other words, Opposer uses ECHO DE as a mean to conjure its house mark LYNCH BAGES used for its 'grand cru'" (Appx23) might have extra steps in defining house marks and unitary marks connecting the two sides of the marks, but the conclusion is flawless. "[C]onjuring up" emphasizes the differences in the marks to consumers.

Lynch-Bages admits in its interrogatory answers ECHO DE LYNCH BAGES is a "second" wine and "echo" indicates it "naturally" follows from the

grand cru wine from Lynch-Bages. (SAppx80). There is ample basis for the Board to conclude: "We understand Opposer's reference to its 'grand cru' to be a reference to be the wine identified simply as LYNCH BAGES." Appx23, n. 46.

There is substantial evidence to support the findings of fact, the conclusions of law are sound.

## Extra Steps Nevertheless Lead To A Correct Conclusion

Lynch-Bages concedes LYNCH BAGES and ANGELUS in the marks are components that may function like house marks. This categorization brings analysis back to the marks in their entireties -- the "unitary expression" logic. The logical step helps after noting that this was the first case where the differences between two marks was that they each had a component which could also serve as a house mark. This is not legal error.

## Where Dissection Matters

Dissection of types of marks (types – not the marks themselves) is implied in *DuPont* factor nine, not discussed: "The variety of goods on which a mark is or is not used (house mark, "family" mark, product mark)." Lynch-Bages raises the parenthetical to mandatory, exclusive "elements." It is illogical that if a mark has both "house mark" and "'family' mark" components is cannot be "a mark" because that is not what factor nine is about. Indeed, the "variety of goods" here seems to be "second" not "grand cru" wine. SAppx79, SAppx81, Appx56, Appx57.

Dissection as a trademark comparison problem is not about mark usage on varieties of goods under *DuPont* factor nine.  Dissection is a problem if the Board only looked to the different components which it did not. It would be a problem if, like Lynch-Bages urges, the Court only looks to the similar components, ignoring differences.  Problem dissection is not labeling the components, in the discussion under "5. The similarities and dissimilarities of the marks" (*DuPont* factor one as "house marks" and "unitary expression".

Lynch-Bages' argument that there is reversible error under *DuPont* factor nine ("because the parties' marks were unitary expressions, it was legal error to dissect the marks into components of product marks and house marks") when the only discussion of the aforesaid components was under *DuPont* factor one falls short.

The Court should not dissect the marks at all.  ECHO – and ECHO OF – refer to the source identification that follows, either LYNCH BAGES or ANGELUS. When the entire combinations are compared, true source identification between them is immediately different.

### Lynch-Bages' Other Inapposite Cases

It would appear that the *Cohn v. Petsmart, Inc.,* 281 F.3d 837, 842 (9th Cir. 2002) admonishment to consider how "consumers will actually encounter the trademarks … in the marketplace" could permit consideration of Lynch-Bages' expert's explanation that the wines will be sold in retail stores near one another,

Appx40 – Appx42, but the displays were different. *Cohn  had* physical or graphic evidence ("The emphasis on these housemarks "has the potential to reduce or eliminate likelihood of confusion." The names "Petsmart" and "Critter Clinic" present the dominant commercial identity.") while here it is immediately apparent that the sources LYNCH BAGES and ANGELUS are those indicated because they follow ECHO.  The first parts of the marks emphasize the second, just like a store sign in *Cohn*.   Reverse confusion, like *Ironhawk Technologies, Inc. v. Dropbox Technologies, Inc.,* 2 F.4th 1150, 1165 (9th Cir. 2021) was never at issue here. Word order in *Lindy Pen Co. v. Bic Pen Corp*., 725 F.2d 1240, 1245 (9th Cir. 1984) is not the same, but the common AUDITOR'S does not have the same meaning as ECHO.

The differences between LYNCH BAGES and ANGELUS are equivalent to the differences in *American. Dairy Queen Corp. v. W.B. Mason Co.*, 2022 WL 2760024 (D. Minn. 2022): ("the overall impression created by the parties' marks (and not merely a comparison of their individual features), demonstrates that the marks are not similar.")

### The Board Properly Weighed the *DuPont* Factors

It is fundamental that the Board can decide confusion is unlikely by specifically describing fewer than all *DuPont* factors.  *Odom's Tennessee Pride Sausage, Inc. v. FF Acquisition, LLC*, 600 F.3d 1343 (Fed. Cir. 2010) (Board did

not err in basing its decision on dissimilarity of marks alone); *Shen Manufacturing Co. v. Ritz Hotel Ltd.*, 393 F.3d 1238 (Fed. Cir. 2004) ("Neither we nor the board, however, need consider every duPont factor"); *Opryland USA Inc. v. The Great American Music Show Inc.*, 970 F.2d 847 (Fed. Cir. 1992).

Indeed, the Board considered five DuPont factors. 1. The similarity of the goods. (Appx14, *DuPont* factor No. (2)); 2. The similarity of the trade channels and classes of customers. (Appx15 *DuPont* factor No. (3)); 3. Customer care and sophistication. (Appx16 *DuPont* factor No. (4)); 4. Third-party registrations. (Appx16 *DuPont* factor No. (6)); 5. The similarities and dissimilarities of the marks (Appx20 *DuPont* factor No. (1)). Differences in one are enough.

There is also evidence both parties goods are "second" wines with the same origin as "grand cru" wines. SAppx79, SAppx81, Appx56, Appx57. This heightens the connection and recognizing ECHO emphasizes "second" and points to the "grand cru" LYNCH BAGE and ANGELUS.

With respect to channels of distribution, the Board concluded it was limited to the descriptions of goods – having no limitations on distribution – and to infer all channels. However, there was evidence that wines such as these would be sold in retail stores and displayed near one another. (Appx40 – Appx42) As pointed out above, the fact that possible side by side presentation in the marketplace is in evidence placed by Lynch-Bages does not help it. Appx40 – Appx42

The Board carefully weighed what could be concluded from third party registrations. There was no determination that ECHO was weak, or "ubiquitous" merely the carefully balanced "ECHO is a fairly commonly-chosen term in the field, and this weighs somewhat against finding that confusion is likely." (Appx19) This is carefully weighing the evidence.

The Board considered that sometimes a first word is important, presumably accepting the psychological principle of primacy over recency (See *Grant v. Royal*, 886 F.3d 874, 945 (10th Cir. 2018) "… "[I]t is not possible to establish a fixed rule saying that the best tactic will always be to apply the primacy or the recency theory " … "The laws of primacy and recency tell us that people best remember what they hear first and last. … "The recency effect is far less powerful [than certain primacy effects], as it is a simple enhancement of short-term memory due to recent exposure to information. … " [citations omitted]). Whether a recency alone is a good rule, or not, the Board gave the interpretation weight before deciding.

Applying the "marks in their entirety" rule, as it should. *Detroit Athletic, supra* the Board correctly noted the presence of DE and D' in the respective marks. The terms are present and what they mean is clear from the record, Appx22, Appx23, Appx39, Sappx16, Sappx37. The Board did not specifically decide whether DE and D' were unrecognizable like VEUVE or recognizable like DA in DA BEARS. (*Red Label Music Publ., Inc. v. Chila Prods.*, 388 F. Supp. 3d 975,

979  (ND Ill 2019) "da Bears" boldly became the first sports team ever to record a hip-hop song.").   The fact that the phrase is in Lynch-Bages' dictionary definition (Appx 87) is enough to evidence that consumers are likely to understand the whole relationship:  ECHO DE or ECHO D' is a "second wine" to the grand cru LYNCH BAGES, SAppx79, SAppx81, or ANGELUS, Appx56, Appx57.   The Board correctly considered this is consistent with other of Angelus' marks like CARILLON D'ANGÉLUS. Appx22

The Board correctly weighed the distinctive terms, calling them house marks, and the common terms which point the consumer to those house marks.  It did not need to call the distinctive terms that dominate the respective marks "house marks" but the principle is the same – those are enough to differentiate. A literal approach to what is "suggestive" was used to distinguish the *Knight Textile Corp. v. Jones Investment Co*., 75 USPQ2d 1313 (TTAB 2005) case – with "suggestive" meaning suggesting descriptive properties of the goods.  Here ECHO OF does suggest, but not the goods, the term suggests the true origin that follows.

**The Conclusion Of  No Likely Conclusion Is Strongly Supported by the Facts**

It was enough for the Board, and is enough to affirm, that the Board concluded: (1) the marks lead with ECHO Appx25 (2) the remainder of the marks are visually and aurally different *Id*. (3) ECHO had conceptual weakness in connection with the goods *Id*.  resulting in (4) unified expressions "that create

different overall meanings and commercial impressions." Appx25  An additional factor was (5) "the use of ECHO with D' and DE followed by the parties' house marks contributes significantly to the overall commercial impressions of the marks as invoking the respective house marks." Appx25, Appx26  (6) ECHO OF means a "second wine" of ANGELUS so ANGELUS "naturally arose as an identifier." That "Opposer's reference to its "grand cru" to be a reference to be the wine identified simply as LYNCH BAGES" Appx23, note 46 is evidenced by Lynch-Bages' interrogatory answers.  SAppx79, SAppx81

Weighing the factors was accomplished considering the conceptual weakness of ECHO and importance of the different terms. "Here, in light of all the evidence before us, we find the dissimilarities in the marks to be a "predominant" factor. See e.g., Odom's Tenn. Pride Sausage, Inc. v. FF Acquisition, L.L.C., 600 F.3d 1343 (Fed. Cir. 2010)), and the overall balance of factors weighs against likely confusion." Appx26 – Appx27

## Conclusion

The Board says they weighed all the relevant factors and the findings of fact and conclusions of law support that position.   Extra steps about house mark components and unitary expressions do not detract from the care in the analysis. Essentially ECHO OF points to something and the something it points to here is either LYNCH BAGES or ANGELUS.  Source indication could not be more clear.

The decision should be affirmed.

Respectfully submitted

April; 19, 2024                    /s/ David C Brezina

David C Brezina
Ladas & Parry LLP
224 S Michigan Ave
Suite 1600
Chicago, IL 60604
(312) 427-1300
dbrezina@ladas.net

Attorneys for Appellee
Chateau Angelus S.A.

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this April 19th, 2024 I will cause the accompanying document to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the registered CM/ECF users in the matter which are believed to include:

Michael Culver
Millen White Zelano & Branigan PC
2200 Clarendon Boulevard, Suite 1400
Arlington, VA 22201

John Egbert
Egbert, McDaniel & Swartz PLLC
1001 Texas Avenue, Suite 1250
Houston, Texas 77002

Respectfully submitted

April; 19, 2024          /s/ David C Brezina

David C Brezina
Ladas & Parry LLP
224 S Michigan Ave
Suite 1600
Chicago, IL 60604
(312) 427-1300
dbrezina@ladas.net

Attorneys for Appellee
Chateau Angelus S.A.