**2024-1197**

# United States Court of Appeals for the Federal Circuit

CHATEAU LYNCH-BAGES,

*Appellant,*

*v.*

CHATEAU ANGELUS S.A.,

*Appellee.*

*On Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board Opposition No. 91268431*

## REPLY BRIEF FOR APPELLANT

MICHAEL S. CULVER
MILLEN, WHITE, ZELANO
  & BRANIGAN PC
2200 Clarendon Boulevard, Suite 1400
Arlington, Virginia 22201
(703) 243-6333
culver@mwzb.com

*Counsel for Appellant*
  *Chateau Lynch-Bages*

MAY 8, 2024

# TABLE OF CONTENTS

**Page**

Table of Authorities ................................................................................. ii

Applicant's Incorrect Model of a Ordinary Consumer .............................. 1

Applicant Fails to Understand the Board's Erroneous Analysis of House Marks .................................................................................................. 3

Applicant Fails to Understand the Nature of the Goods ........................... 4

Applicant Does Not Have a Family of Marks ........................................... 5

"Echo" Does Not Point to Something Else ................................................. 7

Applicant Fails to Appreciate the Similarity of Identical Leading Words ............... 8

Applicant Incorrectly Merges a Unitary Mark With Viewing a Mark in Its Entirety .................................................................................................. 8

Applicant's Erroneous Analysis of "Opposer's" Inapposite Cases .......... 9

Applicant Ignores Its Role as the Newcomer .......................................... 10

Conclusion ................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Cohn v. Petsmart, Inc.*,
  281 F.3d 837 (9th Cir. 2002) ........................................................................10

*Entrepreneur Media, Inc. v. Smith*,
  279 F.3d 1135 (9th Cir. 2002) ........................................................................3

*Han Beauty, Inc. v. Alberto-Culver Co.*,
  236 F.3d 1333, 57 U.S.P.Q.2d 1557 (Fed. Cir. 2001) ....................................6

*Hornblower & Weeks, Inc. v. Hornblower & Weeks, Inc.*,
  60 U.S.P.Q.2d 1733 (T.T.A.B. 2001) ..............................................................6

*In re Detroit Athletic Co.*,
  903 F.3d 1297 (Fed. Cir. 2018) ......................................................................8

*Ironhawk Technologies, Inc. v. Dropbox Technologies, Inc.*,
  2 F.4th 1150 (9th Cir. 2021) ..................................................................... 9-10

*J & J Snack Foods Corp. v. McDonald's Corp.*,
  932 F.2d 1460, 18 U.S.P.Q.2d 1889 (Fed. Cir. 1991) ..............................6, 10

*Nautilus Group, Inc. v. ICON Health and Fitness, Inc.*,
  372 F.3d 1330 (Fed. Cir. 2004) ......................................................................3

*Palm Bay Imps., Inc. v.*
  *Veuve Clicquot Ponsardin Maison Fondee en 1772*,
  396 F.3d 1369 (Fed. Cir. 2005) ......................................................................8

*Shenzhen IVPSTechnology Co. Ltd. v. Fancy Pants Products, LLC*,
  2022 U.S.P.Q.2d 1035 (T.T.A.B. 2022) ..........................................................6

Opposer submits this reply brief in response to Applicant's brief (Doc. #24). In the Board's decision, the decisive factor (outweighing the other factors in Opposer's favor) was the dissimilarities of the marks. This factor was premised on an analysis of house marks and unitary marks (Opposer's Brief p. 15-17). In its response, Applicant calls the Board's use of house marks a "distraction" and the Board's reference to unitary marks as "unnecessary." Thus, even Applicant faults the Board's decision and is unwilling to defend it on its own terms. This further shows that the Board's decision was erroneous, as argued in Opposer's opening brief, and as further discussed herein in reply.

## Applicant's Incorrect Model of a Ordinary Consumer

Applicant fails to use the correct model of a consumer as an ordinary consumer with a fallible memory relying on a general recollection of brands (correct model at Opposer's Brief p. 6-7). Instead, Applicant creates a super-consumer who possesses perfect market information. For instance, Applicant's super-consumer would know that Opposer adopted the word "echo" to distinguish its second wine from its grand cru wine. However, not all ordinary consumers may be familiar with Opposer's other wines or that the product is a so-called second wine or even what a "second wine" is. Likewise, Applicant's super-consumer would know that Applicant's mark referred to the sound of church bells in the vineyard (Applicant's professed derivation) or recognize the mark as among Applicant's other marks

adopting the word "angelus." Again, not all ordinary consumers will be familiar with Applicant's other wines.

Trademark owners may have internal reasons for the derivation of a mark that are not, or never, known to consumers. Just because those reasons are disclosed through discovery in a contested matter does not thereby then imprint them in the consumer's mind. This case only presents two trademarks to be compared; there is no requirement that the subject bottles of wine carry another label with the backstory explaining the meaning of the brand name. Under Applicant's view, the super-consumer is thoroughly familiar with this backstory and relies upon it for all purchasing decisions. This view is far from reality, far from any supporting record evidence, and is mere speculation that all consumers are oriented in this manner.

While the super-consumer recognizes that the components "de" and "D'" are equivalent by translation, some ordinary consumers may not recognize that these components mean the word "of." For those who do not have this recognition, the subject marks can appear as having the identical lead word "echo" followed by some seemingly foreign wording with some similarities, possibly indicating a name or geographical place, each also leading with same sound (de or D'), ending in the letter "s" and each having three syllables. For those who recognize the translation as the word "of," the final component may also appear the same as the foregoing foreign wording with some similarities. There are no translations of "lynch bages" or

"angelus" to guide a consumer fluent in translation, and that consumer may be also not familiar with the religious significance of "angelus."

The foregoing scenarios are not simply speculation; they are realistic ways of picturing the various views by ordinary consumers beyond those views of the possible super-consumer. The determination of likelihood of confusion in this case, and in other cases, is not limited to perceiving a single, solitary type of consumer— the real world is obviously bigger than that, and trademark law should reflect this reality of a diverse range of consumers, among whom any appreciable number could likely be confused. "[B]ecause trademark infringement is only actionable when a mark is likely to 'confuse an appreciable number of people as to the source of the product.'" *Nautilus Group, Inc. v. ICON Health and Fitness, Inc.*, 372 F.3d 1330, 1338 (Fed. Cir. 2004) (quoting *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1151 (9th Cir. 2002)).

## **Applicant Fails to Understand the Board's Erroneous Analysis of House Marks**

Applicant runs away from the Board's use of house marks in making its determination; Applicant's caption labels the house marks as a "Distraction" (Applicant's Brief p. 7) and Opposer's argument regarding house marks as a "red herring" (Applicant's Brief p. 3). To the contrary, the Board was quite clear in the substantial weight it placed on the alleged house marks:

> Moreover, the use of ECHO with D' and DE followed by the parties' house
> marks contributes significantly to the overall commercial impressions of the

marks as invoking the respective house marks. We think that, in this unusual case, where both parties' marks incorporate different-appearing house marks as part of unitary expressions, and where the common term between the marks is somewhat weak, the dissimilarities outweigh the similarities in the respective marks.

Appx25-26.

Applicant equally fails to deal with the erroneous way the Board constructed the alleged house marks (Opposer's Brief p. 15-17). There is no record evidence that the words Lynch Bages or Angelus are ever used alone as house marks, and Lynch Bages is not used alone even as a product mark. The Board simply conjured up house marks from flimsy evidence such as the letterhead of the parties.

Applicant makes the following utterly false statement: "Lynch-Bages concedes LYNCH BAGES and ANGELUS in the marks are components that may function like house marks" (Applicant's Brief p. 20). Notably, Applicant provides no citation for this "concession" that never happened. To the contrary, Opposer's central argument is that the marks at issue do not have house marks as components, and that this faulty conclusion of such by the Board rendered its determination of similarity as erroneous.

## Applicant Fails to Understand the Nature of the Goods

As stated in its application, Applicant's product is simply wine. In its arguments, however, Applicant strains mightily to turn its wine into a second wine (Applicant's Brief pp. 10, 15, 23, 25, 26). This is done to fit its flawed theory of the

4

dissimilarities in the marks. For Applicant, there is no record evidence that its product is a second wine. From the evidence, the Board concluded that Applicant's product was intended to be a "cuvée" meaning combining wines from several batches to achieve a blend (Appx10 at n. 15). Contrary to Applicant's flawed theory, the word "echo" by definition (Appx87) has no connection to a so-called second wine; for that type of wine, the word, as connected to sounds, has no meaning or application; the word, as connected with repetition or imitation, also has no meaning in relation to a junior wine as compared with a premium wine. In that latter sense, the word "echo" could be suggestive but on the higher end because "echo" could equally be deemed as arbitrary for wine.

In considering the goods at issue, Applicant also fails to address the principle that less similarity in the marks is needed when each identifies the same goods (Opposer's Brief p. 8). Here, the goods are competitive as simply "wine" (there is no need to turn Applicant's product into a second wine for this principle). Therefore, here, the marks are sufficiently similar when viewed in this context of identical goods.

## Applicant Does Not Have a Family of Marks

To support its flawed theory of dissimilar marks, Applicant also argues it has a family of marks (Applicant's Brief p. 11, 14). This argument fails under applicable case law:

5

"A family of marks is a group of marks having a common characteristic ... [that] only arises if the purchasing public recognizes that the common characteristic is indicative of a common origin of the goods." *Han Beauty, Inc. v. Alberto-Culver Co*., 236 F.3d 1333, [1336], 57 USPQ2d 1557, 1559 (Fed. Cir. 2001) (quoting and citing *J & J Snack Foods Corp. v. McDonald's Corp*., 932 F.2d 1460, 1462, 18 USPQ2d 1889, 1891 (Fed. Cir. 1991)). "Recognition of the family of marks is achieved when the pattern of usage of the common element is sufficient to be indicative of the origin of the family." *J&J Snack Foods Corp*., [932 F.2d at 1462], 18 USPQ2d at 1891.

Ownership of multiple registrations containing the alleged family feature or term is not sufficient, in and of itself, to establish that a party owns a family of marks. [Collecting cases.]

*Shenzhen IVPS Technology Co. Ltd. v. Fancy Pants Products, LLC*, 2022 U.S.P.Q.2d 1035 at *6 (T.T.A.B. 2022). *Cf. Hornblower & Weeks, Inc. v. Hornblower & Weeks, Inc*., 60 U.S.P.Q.2d 1733, 1737 (T.T.A.B. 2001) (an applicant "is unable to rely on any family of marks, whether inchoate or fully formed, as a defense to opposer's Section 2(d) claim …"). Here, there is absolutely no evidence that the purchasing public recognizes "angelus" as indicative of a common origin of goods. Indeed, there is no evidence that Applicant's marks are even in use in commerce to attain any public recognition.

Applicant even falsely alleges that Opposer has "conceded" that Applicant has a family of marks (Applicant's Brief p. 14 and 18). This false concession is wrung from Opposer's observation that Applicant had various marks with a common component. That in no way concedes the requisite public recognition for a family of marks.

6

### **"Echo" Does Not Point to Something Else**

Applicant argues that the word "echo" by definition points to something else (Applicant's Brief p. 10), and then uses that observation to conclude that the word points to the two sources of origin. This simply echoes the Board's analysis that the word points to the house marks, although Applicant finds that analysis is a "distraction." Moreover, neither Lynch Bages nor Angelus alone is ever used as a source of origin (as noted above, Applicant's failed "family of marks" theory cannot establish Angelus alone as a source of origin).

The word "echo" does not mean to point to something. Of the thirteen third-party registrations (Appx18-19), none is in the form of "echo of [something]." Overwhelmingly, the wording of these registrations is of geographical significance (*e.g.,* Echo Bay, Echo Falls). These marks do not point to the Lands, the Spring, the Bay, or the Falls as the source of origin.

As also previously observed, the subject marks without translation (which is true for an appreciable number of people) would not take the form of "echo of [something]" and thus "echo" would not point to anything. It would simply be part of the leading, identical wording ("echo de") followed by confusing, foreign similar wording.

## <u>Applicant Fails to Appreciate the Similarity of Identical Leading Words</u>

In comparing any two marks, having the identical leading components weighs heavily in finding the marks similar. "The identity of the marks' initial two words is *particularly significant* because consumers typically notice those words first." *In re Detroit Athletic Co*., 903 F.3d 1297, 1302 (Fed. Cir. 2018) (emphasis added) (citing *Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee en 1772*, 396 F.3d 1369, 1372 (Fed. Cir. 2005)). (*See* Opposer's Brief p. 9.)

Applicant's argument regarding the significant effect of identical leading components lands quite far from the target. Applicant argues that the Board accepted "the psychological principle of primacy over recency" (Applicant's Brief p. 24). To the contrary, the Board simply cited to this Court's law on this point (Appx21). The Board's error was in not weighing the significant effect of this operative principle as compared with its erroneous determination in perceiving house marks where none existed, and in erroneously creating a theory of the "unusual case" with dueling house marks.

### <u>Applicant Incorrectly Merges a Unitary Mark</u><br><u>With Viewing a Mark in Its Entirety</u>

As in Applicant's setting aside of the Board's use of house marks as a "distraction," Applicant must again resort to labeling as "unnecessary" the Board's discussion of a unitary expression (Applicant's Brief p. 17). And again, according

8

to Applicant, Opposer's argument pointing to the Board's error becomes a "red herring" (*id.*).

The Board relied heavily in its analysis on the concept of the marks at issue as unitary expressions (Appx22, Appx25 and Appx26). This was contrary to its own case law stating that house marks and unitary marks are clashing principles (Opposer's Brief p. 17).

Applicant takes the principle for comparing the similarity of marks—that marks should not be dissected, but viewed in their entireties—and merges it with the principle of unitary marks as "inseparable" and that "create a single and distinct commercial impression" (Applicant's Brief p. 17). The result is that, to Applicant, every mark becomes a unitary mark. That apple falls quite far from the tree.

### Applicant's Erroneous Analysis of "Opposer's" Inapposite Cases

Applicant labels its argument: "Lynch-Bages' Other Inapposite Cases" (Applicant's Brief p. 21). However, the cases cited (with one exception to be discussed) are those that the Board analyzed in its theory of dueling house marks (compare *id.* with Appx25). Those are not cases chosen by Opposer, as Applicant's label states. If Applicant finds the Board's supporting case law as inapposite, then the parties are in agreement. Applicant also finds as inapposite one case discussed by Opposer concerning reverse confusion that was not cited by the Board: *Ironhawk Technologies, Inc. v. Dropbox Technologies, Inc.,* 2 F.4th 1150, 1165 (9th

Cir. 2021). However, the Board did rely upon *Cohn v. Petsmart, Inc.,* 281 F.3d 837 (9th Cir. 2002) which was also a case concerning reverse confusion, *id.* at 841. Again, the parties are in agreement that the Board incorrectly relied upon inapposite case law.

### Applicant Ignores Its Role as the Newcomer

Applicant as the newcomer had a duty to avoid likelihood of confusion. "The newcomer has the clear opportunity, if not the obligation, to avoid confusion with well-known marks of others." *J&J Snack Foods Corp.,* 932 F.2d at 1464. Regardless of whether Opposer's mark was well-known to consumers, it was certainly well-known to Applicant who felt compelled to write a letter to Opposer announcing the initiation of its mark. Applicant must have known of the troubles and likelihood of confusion that would ensue.

### Conclusion

The Board erroneously did not give sufficient weight to the similarity of the marks in view of the identical, leading components, and particularly in view of the competitive goods. Instead, the Board jettisoned clearly applicable case law to develop a new theory for the unusual case of dueling house marks.

In view of all the foregoing facts and law, this Court should reverse the Board's decision, sustain the opposition, and remand for entry of judgment in Opposer's favor.

Respectfully submitted,

/s/ Michael S. Culver
Michael S. Culver
MILLEN, WHITE, ZELANO & BRANIGAN PC
2200 Clarendon Boulevard, Suite 1400
Arlington, Virginia 22201
(703) 243-6333
culver@mwzb.com

*Attorney for Opposer (Appellant)*
 *Chateau Lynch-Bages*

## **CERTIFICATE OF FILING AND SERVICE**

I hereby certify that on this 8th day of May, 2024, I caused this Reply Brief for Appellant to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

> David C. Brezina
> LADAS & PARRY LLP
> 224 South Michigan Avenue, Suite 1600
> Chicago, Illinois 60604
> (312) 427-1300

> John Egbert
> EGBERT, MCDANIEL & SWARTZ PLLC
> 1001 Texas Avenue, Suite 1250
> Houston, Texas 77002
> (713) 224-8080

> *Counsel for Appellee*

> /s/ Michael S. Culver
> *Counsel for Appellant*

FORM 19. Certificate of Compliance with Type-Volume Limitations

Form 19
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS</u>

**Case Number:** <u>2024-1197</u>

**Short Case Caption:** <u>Chateau Lynch-Bages v. Chateau Angelus S.A.</u>

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

[✔]    the filing has been prepared using a proportionally-spaced typeface and includes <u>2,384</u> words.

[ ]    the filing has been prepared using a monospaced typeface and includes _____ lines of text.

[ ]    the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: <u>05/08/2024</u>

Signature: <u>/s/ Michael S. Culver</u>

Name: <u>Michael S. Culver</u>